1  D. GEORGE SWEIGERT, C/O
   GENERAL DELIVERY
2  MOUNT SHASTA, CALIF  96067

3
                    IN THE UNITED STATES DISTRICT COURT
4                   FOR THE DISTRICT OF SOUTH CAROLINA

5
   D. GEORGE SWEIGERT                    | Case No.: 2:18-cv-01633-RMG-BM
6
          Plaintiff,                     |
7
   vs.                                   |
8                                        | BRIEF IN SUPPORT OF PLAINTIFF'S FRCP
   JASON GOODMAN                         | RULE 12(F) MOTION TO STRIKE
9                                        | DEFENDANT'S MEMORANDUM IN SUPPORT
                                         | OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)
10        Defendant                      |

11

12

13

14        **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE**

15        **DEFEDANT'S MEMORANDUM TO SUPPORT MOTION TO DISMISS**

16        NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private

17 attorney general, to submit this **BRIEF** to support plaintiff's **MOTION** – submitted pursuant **FRCP Rule 12(f)(2)** -

18 - **TO STRIKE** Defendant Goodman's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1,

19 08/03/2018).  **FRCP Rule 12(f)** states:

20              **(f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any**
                **redundant, immaterial, impertinent, or scandalous matter. The court may act:**
21
                  **(1) on its own; or**
22
                    **(2) on motion made by a party either before responding to the pleading or, if a response is**
23              **not allowed, within 21 days after being served with the pleading.**

24

25        As described herein, Goodman has attempted to re-assign HIS liability for the 06/14/2017 closure of the

26 Waldo Terminal (Port of Charleston) to the plaintiff in an effort to transfer responsibility.  The accompanying

27 PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [**RJN**] will provide further illumination for this Court.

28                                            1
                **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

**BACKGROUND**

Unfortunately for the Court, and the plaintiff, Mr. Goodman's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018) is malformed and requires some deconstruction to make sense of the jumble of irrelevances Goodman presents. Goodman has presented a convoluted mess of subject matter outside the scope of this present litigation.

The plaintiff prays the Court's indulgence to allow pertinent <u>affirmative defenses</u> to be included within this this document. Specifically, the plaintiff must also rely on **FRCP Rule 8(B)(2)** to adequately address defendant Goodman's wild allegations; quoting **FRCP Rule 8(B)(2)** in relevant part:

> (B) admit or deny the allegations asserted against it by an opposing party.
> (2) *Denials—Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

**FACTS**

<u>*NO CERTIFICATE OF SERVICE*</u>

As a preliminary matter the Court should note that there is **NO certificate of service** to accompany the documents filed by Goodman (Entries 9-1, 9-2, 03/08/2018). **FRCP Rule 5(d)(1)** requires the filing of a Certificate of Service with pleadings such as the ones Goodman has defectively filed with the Court; quoting **FRCP Rule 5(d)(1)** in relevant part:

> (1) *Required Filings; Certificate of Service.* Any paper after the complaint that is required to be served—together with a certificate of service—must be filed within a reasonable time after service.

<u>*GOODMAN'S USE OF SCANDALOUS COMMENTARY*</u>

In the "FACTS" portion of Goodman's MEMORANDUM (Entry 9-1, 08/03/2018) the following phrases are used:

- targeted harassment campaign against Defendant Goodman,
- in coordination with a team of associates to persistently defame and harass,
- knowingly spreading false information,
- making false statements in court filings,
- equally baseless matter filed in Virginia Federal Court by associate of Sweigert,

2

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

- Goodman is paid by Israeli intelligence service Mossad,
- engaged in a plot to defame Goodman for a bomb hoax,
- misusing the legal system for vindictive and punitive purposes,
- elaborate efforts to harass his victims,
- openly stated he suffers from post-traumatic stress disorder,
- he [undersigned] is a public menace and a danger to himself and others, etc.

The foregoing statements by Goodman are conclusory, vague and ambiguous. Goodman offers no evidence or substantiation of these bold assertions. The language represents what Goodman appears to be proficient at – conducting smear campaigns with little or no evidence to back-up his outlandish claims against the plaintiff.

_ASSOCIATES OF GOODMAN FALSELY ATTRIBUTED TO PLAINTIFF_

**GEORGE WEBB.** As the Court will learn, Mr. Goodman has made dozens of video productions accompanied by wrong-doer George Webb Sweigert [**GWS**]. These video productions included both parties riding in an enclosed automobile, within hotel rooms, and while dining at restaurants, etc. The majority of these productions were created in the time window of approximately February 2017 to July 2017 when GWS was a room-mate, travel companion, co-host, co-anchor, remote reporter and employee of Mr. Goodman.

In at least six (6) co-produced video productions that feature Goodman and GWS in conversation, GWS has proclaimed that he has an association with the "Old Guard" of the Israeli Intelligence Organization known as the Mossad. In fact, GWS states that Goodman has become an unwitting Mossad accomplice in such video productions. Goodman does not correct, alter, refine or change the remarks made by GWS (broadcasts occurring in the May, June, and July 2017 time window).

Exhibit One [**Exh.1**] of the **RJN** identifies a video that features both Goodman and GWS. In the video's audio the following can be heard: [Exh.1, RJN]

00:51    GWS: (Talking to Goodman in a moving car) Now you didn't realize you are an unwitting
                Mossad operative [Goodman smiling]. Oh, I am not supposed to mention that.

00:57    GWS/GOODMAN: Laughter

01:06    GWS: (Talking to Goodman in Goodman's apartment) I will give you the quick Mossad thing.

3
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    Several video clips are spliced in the video that depict GWS mentioning his affiliation with "MOSSAD" in

2    the presence of Goodman on several occasions.

3    Suffice to say that GWS, the former intimate associate of defendant Goodman, is the source of Mossad

4    rumors. As explained in the accompanying PLAINTIFF'S FIRST DECLARATION the undersigned plaintiff has

5    NO affiliation with GWS. **ZERO.**

6    **ROBERT DAVID STEELE.** The defendant is fond of referring to litigation in the U.S.D.C. for the

7    Eastern District of Virginia in his dozen YouTube videos as a "fake lawsuit". **See: 3:17-cv-00601-MHL Steele et**

8    **al v. Goodman et al.** The plaintiff in this "fake lawsuit" is known as Robert David Steele [**RDS**]. Again, RDS is a

9    former associate of Goodman and NOT an associate of the undersigned and NEVER has been (see accompanying

10   PLAINTIFF'S FIRST DECLARATION).

11   In fact, **Exhibit Two** of the **RJN** depicts a video published by Goodman which indicates GWS and RDS

12   were interviewed by Goodman. Additionally, Goodman raised money in excess of $10,000 for RDS in something

13   known as the #UNRIG campaign. **[Exh.2, RJN].**

14   It is interesting that the video depicted in **[Exh.2, RJN]** was recorded and distributed for publication on

15   **06/13/2017**, one day before the Port of Charleston "dirty bomb hoax" closure at the Waldo Terminal on 06/14/2017.

16   Further, defendant Goodman discusses in the YouTube video the allegation of being a Mossad agent with GWS and

17   RDS.

18   In the YouTube video **[Exh.2, RJN]** RDS proclaims that the tragedy of the 9/11 Twin Towers terrorist

19   attack was orchestrated by operatives within the U.S. Government, to which Goodman agrees (confirming

20   Goodman's status as a conspiracy theorist).

21   03:41   GOODMAN. [Talking to GWS/RDS via remote hook-up]  So, a lot of people have accused

22   myself and George [GWS] of being Mossad agents and not speaking of 9/11 because of that.  Speaking for

23   myself I have zero connection with any intelligence agencies whatsoever.

24   [ https://www.youtube.com/watch?v=hMJoAO5OZY8 ]

25   Even though Goodman discusses the Mossad agent rumor in this YouTube video **[Exh.2, RJN]** with RDS

26   and GWS Goodman claims in his MEMORANDUM [Entry 9-1, 08/03/2018] that RDS and GWS are associates of

27   the undersigned (offering zero proof)..

28
4
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

Repeatedly, in this forum and in the District of Eastern Virginia (**See: 3:17-cv-00601-MHL Steele et al v. Goodman et al.**) the undersigned has stated he has had nothing to do with GWS or RDS. **ZERO.** See accompanying PLAINTIFF'S FIRST DECLARATION.

In his MEMORANDUM (Entry 9-1, 08/03/2017) Goodman continues to use the terminology "associates", but does not name these mysterious "associates" – such as GWS and RDS. There is no explanation given for the composition of the "team of associates". This attempt to paint the undersigned with the same brush of Goodman ex-associates (with whom Goodman burned bridges) is unfounded, meritless, frivolous and vexatious [**UMFV**].

**OKEY MARSHALL RICHARDS.** As previously discussed in the Amended Complaint (Entry 5, 06/29/2018) the source of the "radiological dispersion device" threat (which became the 06/14/2017 dirty bomb hoax at the Port of Charleston) was someone code named "Deep Uranium", an associate of GWS and Goodman. Deep Uranium then became "Rock Hudson" of the Hudson Intelligence Group [HIG] on the CrowdSource The Truth YouTube channel.

The Court will recall that Rock Hudson of the HIG was featured on thirty (30) Jason Goodman YouTube shows (see CrowdSource The Truth). Thus, another Goodman associate is described in the MEMORANDUM (Entry 9-1, 08/03/2018) as an associate of the plaintiff.

Deep Uranium became an on-going Goodman associate as "Rock Hudson" and made thirty (30) or more YouTube video productions with Goodman between August 2017 and February 2018. It was later discovered that Deep Uranium and Rock Hudson were actually **Okey Marshall Richards** (an F.B.I. informant of a West Virginia militia prosecution in the 1990s).

The Court will recall that the Waldo Terminal of the Port of Charleston was shut down for a radiological dispersion device emergency response on 06/14/2017 as a direct result of Mr. Goodman's use of **Okey Marshall Richards'** "intelligence reports".

Goodman made a voluntary telephone call (forum contact) to the U.S. Coast Guard (U.S.C.G.) Charleston Sector Duty Officer on 06/14/2017 to start the chain of events. The voluntarily telephone call was an intentional act that was a manifestation of the profit-motivation of Goodman to create a sensationalized news story. These actions by Goodman caused significant panic, distress and alarm within the community; thus, the injury was not purely economic. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

5
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    Frankly, these type of reckless assertions of "associates" made by Goodman to transfer liability to the

2    undersigned, without evidence or substantiation, smack of fraud upon the court.

3    *ALLEGED DIRECT THREATS AGAINST MR. GOODMAN*

4        Under the heading "FACTS" defendant Goodman states:

5        "Mr. Sweigert has made numerous menacing videos containing direct threats against defendant Goodman".

6        The Court will note the pleadings entered as docket entry no. **8**, filed **07/09/2018** (MOTION for Order to

7    Show Cause by D George Sweigert. (Attachments: # <u>1</u> Memo in Support, # <u>2</u> Request for Judicial Notice, # <u>3</u>

8    Supporting Documents)Motions referred to Bristow Marchant.(cwhi, ) (Entered: 07/10/2018)).

9        These pleadings indicate that Goodman had possession of at least eighty (80) videos produced by the

10    undersigned.  Godman has had the opportunity to locate portions of these videos (copies in his possession) that

11    contain "menacing" statements that are "direct threats" to Goodman.

12        Unfortunately for Goodman, as attested to by the plaintiff in the accompanying PLAINTIFF'S FIRST

13    DECLARATION, there are no such "menacing" videos with "direct threats" in existence.

14    *FRAUDULENT VIRGINIA FEDERAL LAWSUIT*

15        Goodman continues to display his contempt for the Courts of the United States in his MEMORANDUM by

16    referring to the RDS lawsuit (**See: 3:17-cv-00601-MHL Steele et al v. Goodman et al.**) as the "fraudulent suit filed

17    in Virginia" and "equally baseless matter filed in in Virginia Federal Court by an associate of Sweigert" [the

18    undersigned presumably].

19        The undersigned has filed no less than six (6) declarations in the RDS lawsuit (**See: 3:17-cv-00601-MHL**

20    **Steele et al v. Goodman et al.**) stating under the penalties of perjury that he has had no communications, contact or

21    association with RDS.  **ZERO.**  RDS is NOT an associate of the plaintiff.  This claim is denied.

22        Mr. Goodman believes he can file UMFV pleadings in this Court to smear the plaintiff and link the

23    undersigned to RDS.  But, Goodman offers no evidence whatsoever, to substantiate these wild allegations, while

24    ignoring the six (6) declarations of the undersigned in the RDS lawsuit (**See: 3:17-cv-00601-MHL Steele et al v.**

25    **Goodman et al.**).  See PLAINTIFF'S FIRST DECLARATION.

26

27

28

6
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

**LAW AND ARGUMENT**

Pursuant to **FRCP Rule 8(B)(2)** the undersigned generally denies all the allegations presented by Mr. Goodman is his "MEMORANDUM" [Entry 9-1, 08/03/2018]. Specifically, the undersigned denies any allegation made by Goodman that has been discussed above. Other allegations that are specifically denied include:

- The existence of a targeted harassment campaign.

- Coordination with a team of associates to persistently defame and harass Goodman.

- Spreading of false information and making false statements in court filings.

- That any claims have been made by the undersigned that Goodman was paid by the Mossad.

- That any direct threats have been made against Goodman.

- That undersigned made videos directing Goodman to "lawyer up".

- That undersigned engaged in a plot to execute a bomb hoax to defame Goodman.

- That the undersigned has misused the legal system for vindictive and punitive purposes.

- Undersigned has never stated – in any forum – that he suffers from post-traumatic stress syndrome.

- Undersigned denies he is a public menace as he is a licensed Emergency Medical Technician and first responder.

*DEFENDANT'S UNFOUNDED, BASELESS, MERITLESS AND VEXATIOUS ARGUMENTS*

The defendant offers no discussion of law and argument in the section of the MEMORANDUM [Entry 9-1, 08/03/2018] labeled "ARGUMENT". Once again the defendant offers only a re-hash of his version of the facts which orbit around his former associate (GWS) and the undersigned.

For instance, defendant asserts in the MEMORANDUM (Entry 9-1, 08/03/2018) " George W. Sweigert's associates were the initial source of information and went to great lengths to convince the defendant that there was imminent and grievous danger to the public." To the contrary, while GWS was an associate, employee, room-mate and co-anchor of Mr. Goodman GWS introduced "Deep Uranium" to Goodman.

"Deep Uranium/Rock Hudson" **Okey Marshall Richards** became a long term associate of Goodman when he completed **thirty (30)** shows on CrowdSource The Truth between August 2017 and February 2018.

7
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    With no evidence to offer, the defendant accuses the undersigned of "collusion with family member and

2  associates to defraud defendant and defendant's viewing audience of $10,000 in a charity fraud that has been

3  denied." It is believed that this rambling statement refers to the video production represented by **Exhibit Two** in the

4  **RJN** that describes the relationship between Goodman, GWS and RDS along with the "#UNRIG Campaign". [Exh.

5  2, RJN].

6    Goodman apparently provided **Mr. Steele** [RDS] a platform on the CrowdSource The Truth YouTube

7  channel to solicit funds for "#UNRIG". These events have nothing to do with the undersigned. **ZERO** (see

8  PLAINTIFF'S FIRST DECLARATION).

9    Defendant asserts in the section labeled "ARGUMENT" (see MEMORANDUM) that "after defendant

10  exposed these schemes, Plaintiff moved aggressively and unwieldly to harass, intimidate and chill the journalistic

11  efforts of the defendant". Again, in a UMFV manner defendant offers no evidence of his wild and baseless claims.

12    On many occasions the undersigned has denied any involvement in this Goodman conspiracy in six (6)

13  declarations filed in the RDS lawsuit. (**See: 3:17-cv-00601-MHL Steele et al v. Goodman et al.**)

14    Goodman (a self-acknowledged conspiracy theorist) sees a conspiracy with the former individuals that

15  Goodman has associated (burned bridges syndrome). Without any evidence, and in a most **UMFV** manner,

16  Goodman relies on slurs to tarnish the undersigned's reputation (as in smear campaign). The Court should njot

17  tolerate this type of scandalous content in a pleading.

18  *STANDING*

19    In the defendant's MEMORANDUM (Entry 9-1, 08/03/2018) Goodman asserts "Plaintiff's has not

20  standing, is not a resident of South Carolina and was not impacted by the alleged action, which evidence indicates,

21  he and his associates deliberately caused to occur [sic]". NOTE: as a matter of legal record, the undersigned

22  DENIES the notion of Goodman's baseless allegation in all its forms.

23    The Courts of the state of South Carolina have personal jurisdiction over Mr. Goodman and his

24  CrowdSource The Truth (CSTT) team (to include GWS, Okey Marshall Richards and **Joe Napoli**). When these

25  actors – under Goodman's supervision and control -- inserted themselves into the operations of the Waldo Terminal

26  and the Maersk Shipping Lines on 06/14/2017 they demonstrated "purposeful direction" to harm the Port of

27  Charleston and create a general state of alarm and panic in the neighboring community.

28

8
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    To refresh the Court's memory, it was GWS (acting as an employee of CSTT under Goodman's

2    supervision) that supposedly provided information to Goodman who was personally controlling an on-air YouTube

3    LiveStream before 2,000+ real-time viewers.  CSTT associate **Joe Napoli** aided Goodman via the tracking of the

4    container ship MEMPHIS MAERSK in real-time before the live audience (see Napoli's use of

5    VESSELFINDER.COM).  Goodman acted as master of ceremonies to orchestrate and supervise the flow of

6    information to the audience – information that was provided by CSTT employee GWS and CSTT associate Joe

7    Napoli.

8    No one compelled Mr. Goodman to make the voluntary telephone call (forum contact) to the U.S.C.G.

9    Charleston Sector Duty Officer to inquire about (in his words) a "dirty bomb" at the Port of Charleston on

10   06/14/2017.  Goodman should have reasonably known that such a call would trigger a cascading set of events that

11   would require an emergency response protocol developed for such radiological dispersal device [RDD] situations.

12   Although Goodman and his CSTT team members are non-residents of South Carolina they have chosen to

13   insert themselves into the operations of the Port of Charleston, S.C.  In fact, even after the 06/14/2017 "dirty bomb

14   hoax" Goodman continued interviews with "Rock Hudson" to analyze the Port's operations.

15   In a YouTube video, entitled "Hudson Revealed", 8/14/2017, (on the Jason Goodman YouTube channel),

16   (20K+ views) the following description is provided:

17   During the interview between Goodman and Rock Hudson (Marshall Richards), Hudson proclaims:

18   40:47:   HUDSON.  We know for a fact that 425 million cargo containers are transported each year – in

19   the world --  [Goodman – uh huh] that represents over 90% of the world's total trade.  [Goodman –

20   Amazing]

21   41:18:   HUDSON.  **Charleston, South Carolina is a port hub**.  [Goodman – right].  These hubs,

22   depending on the security protocols that they are using that, that day for that ship.  They can process 1,500

23   to 50,000 containers per day.

24   41:48:   HUDSON.  Based on the United Nations own meta-data in order for a port hub to process 50,000

25   containers in a 24 hour period is 2,083 containers per hour.  [Goodman – seems like a lot].  [Laughter]

26   Well, let's break it down further – 35 containers per minute.  [Goodman – wow].

27

28

9
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    42:33:  HUDSON.  Because they are making such an effort to determine if a container is safe or not safe.

2    They ought to be ashamed of themselves.

3    (  https://www.youtube.com/watch?v=TWUI8gDPFx0  )

4

5    **CALDER THREE-PART TEST APPLIED TO GOODMAN'S ACTIONS**

6    Goodman is non-resident actor; but, so are out-of-state computer hackers that break into financial systems

7    in a non-resident state.  In NetApp, Inc. v. Nimble Storage, Inc., 41 F.Supp. 3d 816, 821, 825 (N.D. Cal. 2014) an

8    Australian computer hacker was determined to be within the jurisdiction of the California courts for computer

9    hacking of computer systems located in California.

10    The NetApp court relied on Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) citing

11    that:

12    Reynolds's activities must satisfy a three-part "effects test" under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct.
      1482, 79 L.Ed.2d 804 (1984):(1) commission of an intentional act, (2) expressly aimed at the forum state,
13    (3) causing harm that Reynolds knew was likely to be suffered in the forum state. *Schwarzenegger*, 374
      F.3d at 803. "In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum
14    state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207.

15

16    **PART ONE:**  There is no question that the profit-motivated non-resident defendant Goodman intentionally

17    telephoned (forum contact) the U.S.C.G. Charleston Sector Duty Officer on 6/14/2017.  This action consummated a

18    transaction with the forum.

19    In fact, Goodman's team (GWS, "Deep Uranium" and **Joe Napoli**) coordinated information with the

20    defendant on the movements of the MEMPHIS MAERSK before a live audience of over 2,000+ viewers for several

21    hours.  The purpose was to create a sensationalized news event.  Goodman broadcasted the telephone number to the

22    U.S.C.G. Charleston Sector Duty Officer while encouraging his audience to make additional forum contact with the

23    U.S.C.G. Duty Officer.

24    **PART TWO:**  The broadcast by Goodman of the Duty Officer's telephone number (at the Port of

25    Charleston) was "expressly aimed" at the facilities located in the state of South Carolina.  All the allegations

26    presented by the plaintiff regarding the closure of the Waldo Terminal arise out of (or are related to) the defendant's

27    forum transaction.

28

10
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    As admitted to by the defendant in several YouTube videos, both Goodman and GWS had significant

2    interest in the Port of Charleston and the container ship MEMPHIS MAERSK for several weeks prior to the

3    06/14/2017 dirty bomb hoax.  The closure of the Waldo Terminal on 06/14/2017 was merely a climax of activities

4    orchestrated by the two (Goodman/GWS).

5    **PART THREE:**  A reasonable person would expect that notifying the U.S.C.G. about a "dirty bomb"

6    would trigger emergency response events – as is the case in the commonly understood notion of U.S.C.G. search

7    and rescue operations.  Therefore, a similar triggering of events to conduct an adequate search of the container ship

8    MEMPHIS MAERSK would be the logical outcome.  A "dirty bomb" threat would be perceived to require a more

9    comprehensive response than a mere "bomb threat".

10    The Court should consider that this was not a high school or college football game, but an industrial

11    maritime port that contributes almost ten percent (10%) to the economy of the state of South Carolina.  Goodman's

12    initial report of the "dirty bomb" was amplified by Goodman's insistence that his live audience send a Twitter

13    message (tweet) to the U.S.C. 7th District Headquarters with the phrase "DIRTY BOMB   MEMPHIS MAERSK

14    PLEASE INVESTIGATE".  A reasonable individual would expect a Twitter storm of over 8,000 individual tweets

15    would cause a series of cascading events to respond to the R.D.D. threat information.  In sum, the defendant caused

16    harm and injury when he knowingly initiated a radiological emergency response by the U.S.C.G.

17    **PERSONAL JURISDICTION UNDER BRISTOL-MYERS VS. CALIFORNIA**

18    The defendant's purposeful direction of the YouTube LiveStream, along with HIS associates (GWS, "Deep

19    Uranium" and **Joe Napoli**) has been addressed by the wisdom of the U.S. Supreme Court which indicates that

20    personal jurisdiction can be bestowed on an actor for a single occurrence that represents contact with the forum in

21    question.  As the Supreme Court noted in Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773 (2017):

22    In other words, there must be "an affiliation between the forum and the underlying controversy,
principally, [an] activity or an occurrence that takes place in the forum State and is therefore
23    subject to the State's regulation." *Goodyear*, 564 U. S., at 919 (internal quotation marks and
brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues
24    deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.*
(internal quotation marks omitted).

25    The 06/14/2017 dirty bomb hoax is the "underlying controversy" that took place in the forum state.

26

27

28                                              11
                     **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

**SOUTH CAROLINA LONG-ARM STATUTE**

The State of South Carolina has provided for personal jurisdiction to be applied to defendants that are accused of committing tortious acts in the State. This has been articulated in S.C. Code Ann. 36-2-803. Quoted in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
> (3) commission of a tortious act in whole or in part in this State;

An extensive analysis of the applicability of South Carolina's long-arm statute has been provided by the State of South Carolina, Court of Appeals, in <u>Moosally v. Norton & Company</u>, Opinion No. 3769, 04/05/2004. Quoted in relevant part:

> Our long-arm statute, which affords broad power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause. <u>Meyer v. Paschal</u>, 330 S.C. 175, 498 S.E.2d 635 (1998); <u>Hammond v. Cummins Engine Co.</u>, 287 S.C. 200, 336 S.E.2d 867 (1985); <u>see also</u> <u>Cozi Investments v. Schneider</u>, 272 S.C. 354, 252 S.E.2d 116 (1979) (stating that South Carolina's long-arm statute has been construed as a grant of jurisdiction as broad as constitutionally permissible; hence, parameters of statute are restricted only by due process limitations).
>
> And
>
> A **single transaction** is sufficient to confer jurisdiction if these factors are met. <u>Colite Indus.</u>, 297 S.C. at 429, 377 S.E.2d at 322; <u>Hammond</u>, 287 S.C. at 203, 336 S.E.2d at 868-69; <u>see also</u> <u>Askins v. Firedoor Corp.</u>, 281 S.C. 611, 616, 316 S.E.2d 713, 716 (Ct. App. 1984) ("The cases are legion that a single contact with the forum state is sufficient to give its courts personal jurisdiction over a nonresident if the contact gives rise to, or figures prominently in the cause of action under consideration."). Although a single act may support jurisdiction, it must create a "substantial connection" with the forum. <u>Burger King Corp.</u>, 471 U.S. at 475 n.18; <u>White v. Stephens</u>, 300 S.C. 241, 247, 387 S.E.2d 260, 263 (1990). A **single act that causes harm in this State** may create sufficient minimum contacts where the harm arises out of or relates to that act. <u>Southern Plastics Co. v. Southern Commerce Bank</u>, 310 S.C. 256, 423 S.E.2d 128 (1992).

[emphasis added]  https://www.sccourts.org/opinions/displayOpinion.cfm?caseNo=3769

**NON-RESIDENT PLAINTIFF'S STANDING**

The non-resident plaintiff has properly alleged the tortious interference with the operations of the Port of Charleston caused by Goodman and his CrowdSource The Truth team on 06/14/2017. The disruption of the Waldo Terminal was significant as it induced distress and alarm amongst the surrounding communities. Therefore, Goodman's conduct (forum contact via telephone calls) is related to the allegations presented in this lawsuit.

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    The alleged injury caused by Goodman on 06/14/2017 is the disruption of operations at the Waldo

2  Terminal and the loss of monies and funds to cover the expenses of the multi-jurisdictional and multi-agency

3  emergency response.

4    As the Court has witnessed, the defendant is found of publishing UMFV allegations and accusations that

5  the undersigned was somehow involved in the dirty bomb hoax of 06/14/2017.  In this context, the plaintiff

6  continues to suffer injuries to his property interest in a professional reputation by the defendant's constant public

7  dissemination of false allegations that the plaintiff assisted, planned, participated in or somehow executed the events

8  on 06/14/207 that led to the Waldo Terminal closure.

9    By the defendants own words in the MEMORANDUM (Entry 9-1, 08/03/2017), "which evidence

10  indicates, he [undersigned] and his associates deliberately caused to occur [sic]".  As the Court will learn during the

11  discovery phase of this litigation there is no such evidence of involvement.  The plaintiff deserves the right to clear

12  his name.

13    The defendant continues his smear campaign against the plaintiff to deflect attention from the injuries

14  caused to the Port of Charleston and surrounding communities by the defendant's own voluntarily contacts with the

15  this forum.  In fact, the defendant now takes no responsibility for the closure of the Waldo Terminal and has

16  publicly transferred that liability to the plaintiff.

17    Therefore, the plaintiff's continued injuries (loss of property interest in a professional reputation) are

18  directly, and indirectly, related to the underlying controversy – that of the closure of the Waldo Terminal on

19  06/14/2017.

20  _PLAINTIFF'S STATUS AS PRIVATE ATTORNEY GENERAL_

21    As stated in the Amended Complaint [Entry 5, 06/29/2018] the plaintiff is standing in the shoes of the

22  private attorney general provisions of the federal Racketeering Influenced and Corrupt Organizations (RICO) Act.

23  As such this lawsuit remains a public interest lawsuit.  The plaintiff has decided to seek justice for the residents of

24  South Carolina impacted by Goodman's tortious interference in the Port of Charleston and should be permitted to

25  proceed.  Significant interests of the State of South Carolina are at stake and the plaintiff should be permitted to fill

26  the prosecutorial gap that apparently exists.  It is in the public interest to get to the bottom of Goodman's activities,

27  his frauds, his smear campaigns against decent citizens, his collections of monies by wire transfers, etc.

28

13

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1 | *VEXATIOUS PLEADING*

2 | It is instructive to review the style of the case in the pleading submitted by Goodman.  In the

3 | MEMORANDUM rather than list the plaintiff as "D. GEORGE SWEIGERT" Goodman uses the incorrect form of

4 | "David George Sweigert".  In the extreme Goodman could be planning to capitalize on errors he himself has

5 | injected into the Court's processes to escape further liability.

6 | Additionally, the MEMORANDUM does not accompany a pleading MOTION and cites no authorities to

7 | warrant a dismissal -- pure sense the MEMORANDUM is moot and a legal nullity.  This point is amplified as

8 | Goodman has supplied no Certificate of Service with his vexatious pleading.

9 | **SUMMARY**

10 | The plaintiff has chosen the forum of South Carolina -- namely because the lion's share anticipated

11 | discovery involves the U.S.C.G. Charleston Sector, the Port of Charleston, the MAERSK Shipping Lines, etc. – the

12 | Court should weigh the gross misconduct of the defendant and find in favor of the plaintiff to allow this controversy

13 | to be adjudicated in a forum in the state of South Carolina.

14 | Important interest of the State of South Carolina are involved in this public interest lawsuit.  Goodman's

15 | tortious interference with the maritime operations of the Port of Charleston is a near terroristic act.  This misconduct

16 | resulted in a direct injury to the residents of South Carolina.

17 | The Amended Complaint [Entry 5, 06/29/2018] has pointed out, the R.D.D. emergency response involved

18 | nearly a dozen federal and state agencies operating within the jurisdiction of the state of South Carolina (the overall

19 | response included units from the: U.S.C.G., Federal Bureau of Investigation, National Guard, S.C. State Law

20 | Enforcement Division (SLED), S.C. Department of Natural Resources (SCDNR) and emergency response units

21 | from Charleston County and the city of Mount Pleasant, S.C.)

22 | Goodman is allowed to continue his racketeering activities by publicly proclaiming frauds – which he

23 | claims are based on "evidence" – to commercially profit.  Goodman continues to defraud the plaintiff with these

24 | baseless allegations which will require evidence to disprove.

25 | This forum is closest to the controversy in question.  Goodman voluntarily made contact with this forum to

26 | commercially profit from a sensationalized news story.  Goodman made this contact with 2,000+ plus members of

27 | the public watching this spectacle.  Lives and property were put in danger during the R.D.D. emergency response

28 |

14

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    which was triggered by Goodman's supervision of the information fed to this audience.  The members of the public

2    that reside in this forum have been injured and harmed by Goodman's actions.

3

4                                        **PRAYER**

5

6        For the reasons described above Mr. Goodman's MEMORANDUM pleading (Doc. 9-1, 08/03/2018)

7    should be struck from the record as it provides an insufficient defense, within a document that is redundant,

8    immaterial, impertinent and scandalous in nature.

9

10

11        Dated this day of August ___, 2018

12

13                                        D. GEORGE SWEIGERT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            15
            **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNTY SHASTA, CALIF 96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.: 2:18-cv-01633-RMG-BM

**PLAINTIFF'S THIRD**
**REQUEST FOR JUDICIAL NOTICE [RJN]**

## PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

    NOW COMES THE PRO SE plaintiff, a layman non-attorney, to respectfully request this Court take notice of certain public records and documents. This Request for Judicial Notice [**RJN**] is submitted in support of the PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018). (which accompanies this instant RJN).

PUBLIC ARTIFACT NUMBER ONE:  YouTube video of "Hoax Wars" channel.

PUBLIC ARTIFACT NUMBER TWO:  Defendant Jason Goodman's YouTube video

PUBLIC ARTIFACT NUMBER THREE:  Court docket of related litigation

### ATTESTATION

    The undersigned hereby attests that the attached artifacts are true and accurate representations created from source displays on the Internet. These artifacts are provided in a good faith effort to increase judicial efficiency and to promote equal justice.

    The undersigned hereby attests that the foregoing statements have been made under penalties of perjury dated this day ___ of August 2018.

                               D. GEORGE SWEIGERT

1
PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

**PUBLIC ARTIFACT NUMBER ONE:**

Internet URL:  https://www.youtube.com/watch?v=SB1juPQrRB4&t=36s



PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

**PUBLIC ARTIFACT NUMBER TWO:**

Internet URL: https://www.youtube.com/watch?v=hMJoAO5OZY8



Transcript

03:32  clean hands here but ultimately this is
03:34  not something that was done by Israel it
03:37  is something that was done by Dick
03:38  Cheney Dick Cheney so a lot of people
03:41  have accused myself and George of being
03:43  Mossad agents and not speaking about
03:45  9/11 because of that speaking for myself
03:48  I have zero connection with any
03:50  intelligence agencies whatsoever and as

English (auto-generated)

Up next                                    AUTOPLAY

Don't Just Trust The Plan, Watch The Plan Unfold,

Robert David Steele
54,394 views

1.3K    164        SHARE

11:17:12 a.m.
Tuesday, August 7, 2018
Pacific Time (DST)

3
PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

1

2   PUBLIC ARTIFACT NUMBER THREE:  Court docket

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                      4
28             PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

**Richard Johan Conrod , Jr.**
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3000 ☏
Email: rjconrod@kaufcan.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Mercia Francis**

**Interested Party**

**D. George Sweigert**                          represented by **D. George Sweigert**
                                                                General Delivery
                                                                Mount Shasta, CA 96067
                                                                PRO SE

**Defendant**

**Susan A. Lutzke**
*also known as*
"Queen Tut"

**Defendant**

**Queen Tut**
*a woman believed to be known as Carla
A. Howell*
*TERMINATED: 04/19/2018*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/01/2017 | 1 | COMPLAINT against Jason Goodman, Patricia A. Negron, and Queen Tut (Filing fee: $400, receipt number: 0422-5694148) filed by Robert David Steele and Earth Intelligence Network. (Attachments: # 1 Civil Cover Sheet) (jsmi, ) (Entered: 09/05/2017) |
| 09/08/2017 | 2 | Financial Interest Disclosure Statement by Earth Intelligence Network, Robert David Steele. (Biss, Steven) Modified docket text on 9/8/2017 (sbea, ). (Clerk replaced main document on 9/11/2017). NEF was regenerated. Modified docket text on 9/11/2017 (sbea, ). (Entered: 09/08/2017) |
| 09/08/2017 | 3 | Proposed Summons re 1 Complaint *(Summons to Jason Goodman)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/08/2017 | 4 | Proposed Summons re 1 Complaint *(Summons to Patricia Negron)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/08/2017 | 5 | Proposed Summons re 1 Complaint *(Summons to "Queen Tut" aka Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |

| 09/08/2017 | | Notice of Correction re: 2 Corporate Disclosure Statement; Clerk notified filing attorney that the wrong docketing event was used. The Clerk's Office has corrected this error. Attorney was also notified that the Statement did not contain the correct signature block. Clerk has requested attorney to email the document so that it maybe replaced and the NEF regenerated upon receipt. (sbea, ) (Entered: 09/08/2017) |
|---|---|---|
| 09/08/2017 | 6 | Summons Issued as to Jason Goodman, Patricia A. Negron, and Queen Tut. *NOTICE TO ATTORNEY: Please remove header prior to printing. Print out two Electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (sbea, ) (Entered: 09/08/2017)* |
| 09/08/2017 | 7 | Proposed Summons re 1 Complaint *(Summons to "Queen Tut" aka Carla Howell)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/11/2017 | 8 | ORDER. On September 1, 2017, Plaintiffs filed the Complaint against Defendants. Plaintiff Earth Intelligence Network ("Earth Intelligence") has failed to file its Disclosure Statement required by Federal Rule of Civil Procedure 7.1 1 and Local Civil Rule 7.1 of the Rules of the United States District Court for the Eastern District of Virginia. 2 Accordingly, the Court ORDERS Earth Intelligence to file its Financial Disclosure within seven (7) days of entry of this Order. Signed by District Judge M. Hannah Lauck on 09/11/2017. (tjoh, ) (Entered: 09/11/2017) |
| 09/12/2017 | 9 | Financial Interest Disclosure Statement (Local Rule 7.1) by Earth Intelligence Network. (Biss, Steven) (Entered: 09/12/2017) |
| 09/12/2017 | 10 | Summons Issued as to Queen Tut aka Carla Howell. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsmi, ) (Entered: 09/12/2017) |
| 09/21/2017 | 11 | AFFIDAVIT re 6 Summons Issued, 1 Complaint *(Affidavit of Service of Process Upon Jason Goodman)* by Robert David Steele. (Biss, Steven) (Entered: 09/21/2017) |
| 09/22/2017 | | Notice of Correction re 11 Affidavit. Filing attorney notified to return summons and proof of service to Clerk's Office for filing. (jsmi, ) (Entered: 09/22/2017) |
| 09/28/2017 | 12 | SUMMONS Returned Executed. Jason Goodman served on 9/18/2017, answer due 10/10/2017. (Attachments: # 1 Letter) (jsmi, ) (Entered: 09/28/2017) |
| 10/05/2017 | 13 | SUMMONS Returned Executed. Patricia A. Negron served on 9/26/2017, answer due 10/17/2017. (jsmi, ) (Entered: 10/05/2017) |
| 10/06/2017 | 14 | ANSWER to 1 Complaint by Jason Goodman. (Attachments: # 1 Letter)(tjoh, ) (Entered: 10/06/2017) |
| 10/17/2017 | 15 | MOTION for Extension of Time to File Answer re 1 Complaint *and related Responsive Pleadings* by Patricia A. Negron. (Attachments: # 1 Exhibit A-Exhibit A)(Frank, Terry) (Entered: 10/17/2017) |
| 10/24/2017 | 16 | ORDER that the Court GRANTS 15 Motion for Extension of Time to Answer. The Court ORDERS Negron to file her responsive pleadings to the Complaint |

| | | no later than close of business November 8, 2017. Signed by District Judge M. Hannah Lauck on 10/24/2017. (jsmi, ) (Entered: 10/24/2017) |
|---|---|---|
| 11/02/2017 | 17 | CERTIFICATE of Service *and Mailing* re 6 Summons Issued, 1 Complaint by Steven Scott Biss on behalf of All Plaintiffs (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 11/02/2017) |
| 11/02/2017 | 18 | Summons Returned Unexecuted as to Queen Tut. (Attachments: # 1 Letter) (jsmi, ) (Entered: 11/03/2017) |
| 11/06/2017 | 19 | SUMMONS Returned Executed. Queen Tut served on 10/25/2017, answer due 11/15/2017. (Attachments: # 1 Letter) (jsmi, ) (Entered: 11/06/2017) |
| 11/08/2017 | 20 | NOTICE of Appearance by Richard Johan Conrod, Jr on behalf of Patricia A. Negron (Conrod, Richard) (Entered: 11/08/2017) |
| 11/08/2017 | 21 | MOTION to Dismiss by Patricia A. Negron. (Conrod, Richard) (Entered: 11/08/2017) |
| 11/08/2017 | 22 | Memorandum in Support re 21 MOTION to Dismiss filed by Patricia A. Negron. (Conrod, Richard) (Entered: 11/08/2017) |
| 11/15/2017 | 23 | Request for Hearing by Patricia A. Negron re 21 MOTION to Dismiss (Conrod, Richard) (Entered: 11/15/2017) |
| 11/20/2017 | 24 | Memorandum in Opposition re 21 MOTION to Dismiss filed by Robert David Steele. (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 11/20/2017) |
| 11/27/2017 | 25 | MOTION for Extension of Time to File Response/Reply as to 24 Memorandum in Opposition by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 11/27/2017) |
| 11/28/2017 | 26 | ORDER that the Court GRANTS 25 Motion for Extension of Time. The Court ORDERS Negron to file her reply no later than close of business December 4, 2017. Signed by District Judge M. Hannah Lauck on 11/28/2017. (jsmi, ) (Entered: 11/28/2017) |
| 12/04/2017 | 27 | MOTION for Extension of Time to File Response/Reply as to 24 Memorandum in Opposition by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 12/04/2017) |
| 12/05/2017 | 28 | ORDER that the Court GRANTS Defendant Patricia A. Negron's 27 Motion for Extension of Time. The Court ORDERS Negron to file her reply no later than close of business December 8, 2017. Signed by District Judge M. Hannah Lauck on 12/5/2017. (jsmi, ) (Entered: 12/05/2017) |
| 12/08/2017 | 29 | REPLY to Response to Motion re 21 MOTION to Dismiss filed by Patricia A. Negron. (Frank, Terry) (Entered: 12/08/2017) |
| 01/23/2018 | 30 | Request for Entry of Default as to *"Queen Tut" a/k/a Susan A. Lutzke* by Earth Intelligence Network, Robert David Steele. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Biss, Steven) (Entered: 01/23/2018) |
| 02/21/2018 | 31 | |

| | | |
|---|---|---|
| | | (Court only) Letter received from Mercia Francis. (jsmi, ) (Additional attachment(s) added on 2/22/2018: # 1 Attachment) (jsmi, ). (Entered: 02/22/2018) |
| 02/23/2018 | 32 | (Court only) Letter *Responding to Document 31*. (Biss, Steven) (Entered: 02/23/2018) |
| 03/01/2018 | 33 | (Court only) Letter received from Mercia Francis. (jsmi, ) (Entered: 03/01/2018) |
| 03/07/2018 | 34 | (Court only) Response to 31 Letter, 33 Letter filed by Robert David Steele. (Biss, Steven) (Entered: 03/07/2018) |
| 03/09/2018 | 35 | ORDER that the Court DENIES WITHOUT PREJUDICE Plaintiff's 30 Motion for Entry of Default. The Court DIRECTS the Clerk to restrict the filings associated with docket numbers 31 and 33 as "Court Only". See Order for details. Signed by District Judge M. Hannah Lauck on 3/9/2018. (jsmi, ) (Entered: 03/09/2018) |
| 03/25/2018 | 36 | MOTION to Amend/Correct 1 Complaint *(Motion For Leave To File Amended Complaint)* by Robert David Steele. (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 03/25/2018) |
| 03/25/2018 | 37 | Memorandum in Support re 36 MOTION to Amend/Correct 1 Complaint *(Motion For Leave To File Amended Complaint)* filed by Robert David Steele. (Biss, Steven) (Entered: 03/25/2018) |
| 04/11/2018 | 38 | ORDER that the Court GRANTS 36 Motion to Amend. Plaintiffs SHALL file their Amended Complaint within 5 days of this Order. Plaintiffs have 90 days to serve any remaining defendants not yet served. To the extent necessary the Court DENIES AS MOOT Negron's 21 Motion to Dismiss. All responsive pleadings to the Amended Complaint SHALL be filed in accordance with the Federal and Local Rules of Civil Procedure. Signed by District Judge M. Hannah Lauck on 4/11/2018. Copy to Goodman as directed. (jsmi, ) (Entered: 04/11/2018) |
| 04/13/2018 | 39 | AMENDED COMPLAINT against All Defendants, filed by Robert David Steele.(Biss, Steven) (Entered: 04/13/2018) |
| 04/17/2018 | 40 | Proposed Summons re 39 Amended Complaint *(Request for Issuance of Summons to Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 04/17/2018) |
| 04/19/2018 | 41 | Summons Issued as to Susan A. Lutzke. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsmi, ) (Entered: 04/19/2018) |
| 04/26/2018 | 42 | MOTION for Extension of Time to File Response/Reply as to 39 Amended Complaint by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 04/26/2018) |
| 04/27/2018 | 43 | ORDER that the Court GRANTS Defendant Patricia A. Negron's 42 Motion for Extension of Time. Negron SHALL FILE her response to Plaintiffs' Amended Complaint no later than close of business May 11, 2018. Signed by District Judge M. Hannah Lauck on 4/27/2018. (jsmi, ) (Entered: 04/27/2018) |

| 04/30/2018 | 44 | ANSWER to Complaint by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 04/30/2018 | 45 | SPECIAL MOTION to Dismiss the Complaint Under the VA Anti-Slapp Statute by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 04/30/2018 | 46 | MOTION to Sever by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 05/11/2018 | 47 | MOTION to Dismiss for Failure to State a Claim by Patricia A. Negron. (Frank, Terry) (Entered: 05/11/2018) |
| 05/11/2018 | 48 | Memorandum in Support re 47 MOTION to Dismiss for Failure to State a Claim filed by Patricia A. Negron. (Frank, Terry) (Entered: 05/11/2018) |
| 05/14/2018 | 49 | Memorandum in Opposition re 45 MOTION to Dismiss filed by Robert David Steele. (Biss, Steven) (Entered: 05/14/2018) |
| 05/14/2018 | 50 | Memorandum in Opposition re 46 MOTION to Sever filed by Robert David Steele. (Biss, Steven) (Entered: 05/14/2018) |
| 05/22/2018 | 51 | Declaration of George Sweigert. (Attachments: # 1 Exhibits)(jsmi, ) (Entered: 05/23/2018) |
| 05/23/2018 | 52 | Defendant's Reply to Memorandum Opposition to Special Motion to Dismiss filed by Jason Goodman. (jsmi, ) (Entered: 05/24/2018) |
| 05/25/2018 | 53 | Memorandum in Opposition re 47 MOTION to Dismiss for Failure to State a Claim filed by Robert David Steele. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Biss, Steven) (Entered: 05/25/2018) |
| 05/25/2018 | 54 | Second Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/25/2018) |
| 05/29/2018 | 55 | Third Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/30/2018) |
| 05/30/2018 | 56 | Fourth Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/30/2018) |
| 05/31/2018 | 57 | Reply to Motion re 47 MOTION to Dismiss for Failure to State a Claim filed by Patricia A. Negron. (Conrod, Richard) (Entered: 05/31/2018) |
| 06/01/2018 | 58 | Fifth Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/04/2018) |
| 06/07/2018 | 59 | Sixth Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/07/2018) |
| 06/13/2018 | 60 | Seventh Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/14/2018) |
| 07/25/2018 | 61 | AFFIDAVIT re 39 Amended Complaint, 41 Summons Issued *(Affidavit Of Service Of Summons And Complaint On Defendant, Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 07/25/2018) |
| 07/26/2018 |  | Notice of Correction re 61 Affidavit. Filing attorney notified to return proof of service documents to the Clerk's Office for filing. (jsmi, ) (Entered: 07/26/2018) |
| 07/30/2018 | 62 | SUMMONS Returned Executed. Susan A. Lutzke served on 7/10/2018, answer due 7/31/2018. (jsmi, ) (Entered: 07/31/2018) |
| 08/07/2018 | 63 | NOTICE of Change of Address by D. George Sweigert to General Delivery, Mount Shasta, California 96067. (smej, ) (Entered: 08/07/2018) |

CM/ECF - vaed

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/08/2018 17:43:04 | | |
| **PACER Login:** | dgsweigert:5610803:0 | **Client Code:** |  |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cv-00601-MHL |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNT SHASTA, CALIF  96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.: **2:18-cv-01633-RMG-BM**

**PLAINTIFF'S FIRST DECLARATION**

## FIRST DECLARATION OF PLAINTIFF

    NOW COMES THE PRO SE plaintiff, a layman non-attorney, to submit this declaration to support the plaintiff's **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)**.  This declaration is filed concurrently with the aforementioned document.  The undersigned hereby attests that the following statements are made under the penalties of perjury.

- I have no knowledge of a targeted harassment campaign against the defendant Goodman.
- I have no knowledge of associates that would participate in such a campaign.  I do not maintain relationships with such "associates" that would participate in such a targeted harassment campaign.
- I have no knowledge of knowingly spreading false information.
- I have no knowledge of making false statements in court filings.
- I have no knowledge as to whether or not the "Virginia Federal" lawsuit is baseless or not.
- I have never said that defendant Goodman is a member of, or paid by, the Israeli intelligence service known as Mossad.

1

**PLAINTIFF'S FIRST DECLARATION**

- I have not communicated with RDS with any manner. I am only aware of possibly two (2) electronic messages that may have been inadvertently copied to the email account of the RDS initiative known as "UNRIG".
- Any communications inadvertently sent to UNRIG was done so in a unilateral manner with no response requested or expected.
- I have no association with GWS or RDS.
- I have had no association with Okey Marshall Richards (OMR), aka "Rock Hudson". I have not communicated with OMR in any form.
- I have not coordinated with GWS, RDS or OMR in any form. This includes any planning, organizing, facilitating or collaboration with activities that may be related to the Port of Charleston radiological emergency response of 06/14/2017.
- I am an honorably discharged veteran of the U.S. Air Force.
- I am unaware of menacing videos produced by me that contain direct threats to defendant Goodman.
- I have filed six (6) declarations in the "Virginia Federal" lawsuit that have restated essentially the same information as the foregoing.
- Attached in a copy of the court docket for the "Virginia Federal" lawsuit. I certify that the attached copy is an accurate and true copy of the court docket.
- The declarations that I have filed in the "Virginia Federal" lawsuit appear as documents 51 (05/22/2018), 54 (05/25/2018), 55 (05/29/2018), 56 (05/30/2018), 58 (06/01/2018), 59 (06/07/2018), and 60 (06/13/2018) in the attached.

I hereby attest, under penalties of perjury, that the above statements are true to the best of my memory and understanding.

Dated this day of August  8, 2018

D. GEORGE SWEIGERT

3

**PLAINTIFF'S FIRST DECLARATION**

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNT SHASTA, CALIF  96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.:  2:18-cv-01633-RMG-BM

**CERTIFICATE OF SERVICE**

## CERTIFICATE OF SERVICE

On this day, August _8_, 2018, I have caused to be placed into the U.S. Postal Service true copies of the attached pleadings (with First Class postage affixed) to the following parties.

FRCP RULE 12(f) MOTION, BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION, PLAINTIFF'S FIRST DECLARATION, THIRD REQUEST FOR JUDICIAL NOTICE

        Clerk of the Court
        U.S. District Court
        Matthew J. Perry, Jr. Courthouse
        901 Richland Street
        Columbia, South Carolina 29201

        Jason Goodman
        252 7th Avenue #6S
        New York, NY 10001

I hereby attest under the penalties of perjury that the foregoing is true and accurate.

        D. GEORGE SWEIGERT

CERTIFICATE OF SERVICE - 1

1    D. GEORGE SWEIGERT, C/O
     GENERAL DELIVERY
2    MOUNT SHASTA, CALIF  96067

3

4                IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF SOUTH CAROLINA

5

6    D. GEORGE SWEIGERT                Case No.: **2:18-cv-01633-RMG-BM**

7           Plaintiff,

8    vs.                              **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)**

9    JASON GOODMAN

10          Defendant

11

12

13

14        <u>**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE**</u>

15             <u>**DEFEDANT'S MEMORANDUM TO SUPPORT MOTION TO DISMISS**</u>

16         NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private

17 attorney general, to submit this **BRIEF** to support plaintiff's **MOTION** – submitted pursuant **FRCP Rule 12(f)(2) -**

18 **- TO STRIKE** Defendant Goodman's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1,

19 08/03/2018).  **FRCP Rule 12(f)** states:

20                  **(f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any**

21                    **redundant, immaterial, impertinent, or scandalous matter. The court may act:**

22                      **(1) on its own; or**

23                      **(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.**

24

25         As described herein, Goodman has attempted to re-assign HIS liability for the 06/14/2017 closure of the

26 Waldo Terminal (Port of Charleston) to the plaintiff in an effort to transfer responsibility.  The accompanying

27 PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [**RJN**] will provide further illumination for this Court.

28

                                       1
         **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1

## **BACKGROUND**

2

3        Unfortunately for the Court, and the plaintiff, Mr. Goodman's MEMORANDUM IN SUPPORT OF

4   MOTION TO DISMISS (Entry 9-1, 08/03/2018) is malformed and requires some deconstruction to make sense of

5   the jumble of irrelevances Goodman presents. Goodman has presented a convoluted mess of subject matter outside

6   the scope of this present litigation.

7        The plaintiff prays the Court's indulgence to allow pertinent <u>affirmative defenses</u> to be included within this

8   this document. Specifically, the plaintiff must also rely on **FRCP Rule 8(B)(2)** to adequately address defendant

9   Goodman's wild allegations; quoting **FRCP Rule 8(B)(2)** in relevant part:

10            (B) admit or deny the allegations asserted against it by an opposing party.
             (2) *Denials—Responding to the Substance.* A denial must fairly respond to the substance of the
11            allegation.

12

## **FACTS**

13

*NO CERTIFICATE OF SERVICE*

14

15        As a preliminary matter the Court should note that there is **NO certificate of service** to accompany the

16   documents filed by Goodman (Entries 9-1, 9-2, 03/08/2018). **FRCP Rule 5(d)(1)** requires the filing of a Certificate

17   of Service with pleadings such as the ones Goodman has defectively filed with the Court; quoting **FRCP Rule**

18   **5(d)(1)** in relevant part:

19
             (1) *Required Filings; Certificate of Service.* Any paper after the complaint that is required to be served—
20            together with a certificate of service—must be filed within a reasonable time after service.

21

*GOODMAN'S USE OF SCANDALOUS COMMENTARY*

22

23        In the "FACTS" portion of Goodman's MEMORANDUM (Entry 9-1, 08/03/2018) the following phrases

24   are used:

25        • targeted harassment campaign against Defendant Goodman,

26        • in coordination with a team of associates to persistently defame and harass,

27        • knowingly spreading false information,

28        • making false statements in court filings,

     • equally baseless matter filed in Virginia Federal Court by associate of Sweigert,

2

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

- Goodman is paid by Israeli intelligence service Mossad,
- engaged in a plot to defame Goodman for a bomb hoax,
- misusing the legal system for vindictive and punitive purposes,
- elaborate efforts to harass his victims,
- openly stated he suffers from post-traumatic stress disorder,
- he [undersigned] is a public menace and a danger to himself and others, etc.

The foregoing statements by Goodman are conclusory, vague and ambiguous.  Goodman offers no evidence or substantiation of these bold assertions.  The language represents what Goodman appears to be proficient at – conducting smear campaigns with little or no evidence to back-up his outlandish claims against the plaintiff.

### ASSOCIATES OF GOODMAN FALSELY ATTRIBUTED TO PLAINTIFF

**GEORGE WEBB.**  As the Court will learn, Mr. Goodman has made dozens of video productions accompanied by wrong-doer George Webb Sweigert [**GWS**].  These video productions included both parties riding in an enclosed automobile, within hotel rooms, and while dining at restaurants, etc.  The majority of these productions were created in the time window of approximately February 2017 to July 2017 when GWS was a room-mate, travel companion, co-host, co-anchor, remote reporter and employee of Mr. Goodman.

In at least six (6) co-produced video productions that feature Goodman and GWS in conversation, GWS has proclaimed that he has an association with the "Old Guard" of the Israeli Intelligence Organization known as the Mossad.  In fact, GWS states that Goodman has become an unwitting Mossad accomplice in such video productions. Goodman does not correct, alter, refine or change the remarks made by GWS (broadcasts occurring in the May, June, and July 2017 time window).

Exhibit One [**Exh.1**] of the **RJN** identifies a video that features both Goodman and GWS.  In the video's audio the following can be heard: [Exh.1, RJN]

00:51    GWS:  (Talking to Goodman in a moving car)  Now you didn't realize you are an unwitting

Mossad operative [Goodman smiling].  Oh, I am not supposed to mention that.

00:57    GWS/GOODMAN:  Laughter

01:06    GWS:  (Talking to Goodman in Goodman's apartment)  I will give you the quick Mossad thing.

3

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    Several video clips are spliced in the video that depict GWS mentioning his affiliation with "MOSSAD" in

2    the presence of Goodman on several occasions.

3    Suffice to say that GWS, the former intimate associate of defendant Goodman, is the source of Mossad

4    rumors. As explained in the accompanying PLAINTIFF'S FIRST DECLARATION the undersigned plaintiff has

5    NO affiliation with GWS. **ZERO.**

6    **ROBERT DAVID STEELE.** The defendant is fond of referring to litigation in the U.S.D.C. for the

7    Eastern District of Virginia in his dozen YouTube videos as a "fake lawsuit". **See: 3:17-cv-00601-MHL Steele et**

8    **al v. Goodman et al.** The plaintiff in this "fake lawsuit" is known as Robert David Steele [**RDS**]. Again, RDS is a

9    former associate of Goodman and NOT an associate of the undersigned and NEVER has been (see accompanying

10    PLAINTIFF'S FIRST DECLARATION).

11    In fact, **Exhibit Two** of the **RJN** depicts a video published by Goodman which indicates GWS and RDS

12    were interviewed by Goodman. Additionally, Goodman raised money in excess of $10,000 for RDS in something

13    known as the #UNRIG campaign. [**Exh.2, RJN**].

14    It is interesting that the video depicted in [**Exh.2, RJN**] was recorded and distributed for publication on

15    **06/13/2017**, one day before the Port of Charleston "dirty bomb hoax" closure at the Waldo Terminal on 06/14/2017.

16    Further, defendant Goodman discusses in the YouTube video the allegation of being a Mossad agent with GWS and

17    RDS.

18    In the YouTube video [**Exh.2, RJN**] RDS proclaims that the tragedy of the 9/11 Twin Towers terrorist

19    attack was orchestrated by operatives within the U.S. Government, to which Goodman agrees (confirming

20    Goodman's status as a conspiracy theorist).

21    03:41    GOODMAN. [Talking to GWS/RDS via remote hook-up]  So, a lot of people have accused

22    myself and George [GWS] of being Mossad agents and not speaking of 9/11 because of that. Speaking for

23    myself I have zero connection with any intelligence agencies whatsoever.

24    [ https://www.youtube.com/watch?v=hMJoAO5OZY8 ]

25    Even though Goodman discusses the Mossad agent rumor in this YouTube video [**Exh.2, RJN**] with RDS

26    and GWS Goodman claims in his MEMORANDUM [Entry 9-1, 08/03/2018] that RDS and GWS are associates of

27    the undersigned (offering zero proof)..

28

4

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    Repeatedly, in this forum and in the District of Eastern Virginia (**See: 3:17-cv-00601-MHL Steele et al v.**

2  **Goodman et al.**) the undersigned has stated he has had nothing to do with GWS or RDS. **ZERO.** See

3  accompanying PLAINTIFF'S FIRST DECLARATION.

4    In his MEMORANDUM (Entry 9-1, 08/03/2017) Goodman continues to use the terminology "associates",

5  but does not name these mysterious "associates" – such as GWS and RDS. There is no explanation given for the

6  composition of the "team of associates". This attempt to paint the undersigned with the same brush of Goodman ex-

7  associates (with whom Goodman burned bridges) is unfounded, meritless, frivolous and vexatious [**UMFV**].

8  **OKEY MARSHALL RICHARDS.** As previously discussed in the Amended Complaint (Entry 5,

9  06/29/2018) the source of the "radiological dispersion device" threat (which became the 06/14/2017 dirty bomb

10  hoax at the Port of Charleston) was someone code named "Deep Uranium", an associate of GWS and Goodman.

11  Deep Uranium then became "Rock Hudson" of the Hudson Intelligence Group [HIG] on the CrowdSource The

12  Truth YouTube channel.

13    The Court will recall that Rock Hudson of the HIG was featured on thirty (30) Jason Goodman YouTube

14  shows (see CrowdSource The Truth). Thus, another Goodman associate is described in the MEMORANDUM

15  (Entry 9-1, 08/03/2018) as an associate of the plaintiff.

16    Deep Uranium became an on-going Goodman associate as "Rock Hudson" and made thirty (30) or more

17  YouTube video productions with Goodman between August 2017 and February 2018. It was later discovered that

18  Deep Uranium and Rock Hudson were actually **Okey Marshall Richards** (an F.B.I. informant of a West Virginia

19  militia prosecution in the 1990s).

20    The Court will recall that the Waldo Terminal of the Port of Charleston was shut down for a radiological

21  dispersion device emergency response on 06/14/2017 as a direct result of Mr. Goodman's use of **Okey Marshall**

22  **Richards'** "intelligence reports".

23    Goodman made a voluntary telephone call (forum contact) to the U.S. Coast Guard (U.S.C.G.) Charleston

24  Sector Duty Officer on 06/14/2017 to start the chain of events. The voluntarily telephone call was an intentional act

25  that was a manifestation of the profit-motivation of Goodman to create a sensationalized news story. These actions

26  by Goodman caused significant panic, distress and alarm within the community; thus, the injury was not purely

27  economic. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

28
5
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1           Frankly, these type of reckless assertions of "associates" made by Goodman to transfer liability to the

2    undersigned, without evidence or substantiation, smack of fraud upon the court.

3    *ALLEGED DIRECT THREATS AGAINST MR. GOODMAN*

4           Under the heading "FACTS" defendant Goodman states:

5           "Mr. Sweigert has made numerous menacing videos containing direct threats against defendant Goodman".

6           The Court will note the pleadings entered as docket entry no. **8**, filed **07/09/2018** (MOTION for Order to

7    Show Cause by D George Sweigert. (Attachments: # <u>1</u> Memo in Support, # <u>2</u> Request for Judicial Notice, # <u>3</u>

8    Supporting Documents)Motions referred to Bristow Marchant.(cwhi, ) (Entered: 07/10/2018)).

9           These pleadings indicate that Goodman had possession of at least eighty (80) videos produced by the

10    undersigned.  Godman has had the opportunity to locate portions of these videos (copies in his possession) that

11    contain "menacing" statements that are "direct threats" to Goodman.

12           Unfortunately for Goodman, as attested to by the plaintiff in the accompanying PLAINTIFF'S FIRST

13    DECLARATION, there are no such "menacing" videos with "direct threats" in existence.

14    *FRAUDULENT VIRGINIA FEDERAL LAWSUIT*

15           Goodman continues to display his contempt for the Courts of the United States in his MEMORANDUM by

16    referring to the RDS lawsuit (**See: 3:17-cv-00601-MHL Steele et al v. Goodman et al.**) as the "fraudulent suit filed

17    in Virginia" and "equally baseless matter filed in in Virginia Federal Court by an associate of Sweigert" [the

18    undersigned presumably].

19           The undersigned has filed no less than six (6) declarations in the RDS lawsuit (**See: 3:17-cv-00601-MHL**

20    **Steele et al v. Goodman et al.**) stating under the penalties of perjury that he has had no communications, contact or

21    association with RDS.  **ZERO.**  RDS is NOT an associate of the plaintiff.  This claim is denied.

22           Mr. Goodman believes he can file UMFV pleadings in this Court to smear the plaintiff and link the

23    undersigned to RDS.  But, Goodman offers no evidence whatsoever, to substantiate these wild allegations, while

24    ignoring the six (6) declarations of the undersigned in the RDS lawsuit (**See: 3:17-cv-00601-MHL Steele et al v.**

25    **Goodman et al.**).  See PLAINTIFF'S FIRST DECLARATION.

26

27

28

6

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1

## LAW AND ARGUMENT

2      Pursuant to **FRCP Rule 8(B)(2)** the undersigned generally denies all the allegations presented by Mr.

3  Goodman is his "MEMORANDUM" [Entry 9-1, 08/03/2018].  Specifically, the undersigned denies any allegation

4  made by Goodman that has been discussed above.  Other allegations that are specifically denied include:

5      • The existence of a targeted harassment campaign.

6      • Coordination with a team of associates to persistently defame and harass Goodman.

7      • Spreading of false information and making false statements in court filings.

8      • That any claims have been made by the undersigned that Goodman was paid by the Mossad.

9      • That any direct threats have been made against Goodman.

10     • That undersigned made videos directing Goodman to "lawyer up".

11     • That undersigned engaged in a plot to execute a bomb hoax to defame Goodman.

12     • That the undersigned has misused the legal system for vindictive and punitive purposes.

13     • Undersigned has never stated – in any forum – that he suffers from post-traumatic stress
14       syndrome.

15     • Undersigned denies he is a public menace as he is a licensed Emergency Medical Technician and
16       first responder.

17  *DEFENDANT'S UNFOUNDED, BASELESS, MERITLESS AND VEXATIOUS ARGUMENTS*

18     The defendant offers no discussion of law and argument in the section of the MEMORANDUM [Entry 9-1,

19  08/03/2018] labeled "ARGUMENT".  Once again the defendant offers only a re-hash of his version of the facts

20  which orbit around his former associate (GWS) and the undersigned.

21     For instance, defendant asserts in the MEMORANDUM (Entry 9-1, 08/03/2018) " George W. Sweigert's

22  associates were the initial source of information and went to great lengths to convince the defendant that there was

23  imminent and grievous danger to the public."  To the contrary, while GWS was an associate, employee, room-mate

24  and co-anchor of Mr. Goodman GWS introduced "Deep Uranium" to Goodman.

25     "Deep Uranium/Rock Hudson" **Okey Marshall Richards** became a long term associate of Goodman when

26  he completed **thirty (30)** shows on CrowdSource The Truth between August 2017 and February 2018.

27

28
                                          7
      **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    With no evidence to offer, the defendant accuses the undersigned of "collusion with family member and

2 associates to defraud defendant and defendant's viewing audience of $10,000 in a charity fraud that has been

3 denied." It is believed that this rambling statement refers to the video production represented by **Exhibit Two** in the

4 **RJN** that describes the relationship between Goodman, GWS and RDS along with the "#UNRIG Campaign". [Exh.

5 2, RJN].

6    Goodman apparently provided **Mr. Steele** [RDS] a platform on the CrowdSource The Truth YouTube

7 channel to solicit funds for "#UNRIG". These events have nothing to do with the undersigned. **ZERO** (see

8 PLAINTIFF'S FIRST DECLARATION).

9    Defendant asserts in the section labeled "ARGUMENT" (see MEMORANDUM) that "after defendant

10 exposed these schemes, Plaintiff moved aggressively and unwieldly to harass, intimidate and chill the journalistic

11 efforts of the defendant". Again, in a UMFV manner defendant offers no evidence of his wild and baseless claims.

12    On many occasions the undersigned has denied any involvement in this Goodman conspiracy in six (6)

13 declarations filed in the RDS lawsuit. (**See: 3:17-cv-00601-MHL Steele et al v. Goodman et al.**)

14    Goodman (a self-acknowledged conspiracy theorist) sees a conspiracy with the former individuals that

15 Goodman has associated (burned bridges syndrome). Without any evidence, and in a most **UMFV** manner,

16 Goodman relies on slurs to tarnish the undersigned's reputation (as in smear campaign). The Court should njot

17 tolerate this type of scandalous content in a pleading.

18 *STANDING*

19    In the defendant's MEMORANDUM (Entry 9-1, 08/03/2018) Goodman asserts "Plaintiff's has not

20 standing, is not a resident of South Carolina and was not impacted by the alleged action, which evidence indicates,

21 he and his associates deliberately caused to occur [sic]". NOTE: as a matter of legal record, the undersigned

22 DENIES the notion of Goodman's baseless allegation in all its forms.

23    The Courts of the state of South Carolina have personal jurisdiction over Mr. Goodman and his

24 CrowdSource The Truth (CSTT) team (to include GWS, Okey Marshall Richards and **Joe Napoli**). When these

25 actors – under Goodman's supervision and control -- inserted themselves into the operations of the Waldo Terminal

26 and the Maersk Shipping Lines on 06/14/2017 they demonstrated "purposeful direction" to harm the Port of

27 Charleston and create a general state of alarm and panic in the neighboring community.

28

8

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    To refresh the Court's memory, it was GWS (acting as an employee of CSTT under Goodman's

2    supervision) that supposedly provided information to Goodman who was personally controlling an on-air YouTube

3    LiveStream before 2,000+ real-time viewers.  CSTT associate **Joe Napoli** aided Goodman via the tracking of the

4    container ship MEMPHIS MAERSK in real-time before the live audience (see Napoli's use of

5    VESSELFINDER.COM).  Goodman acted as master of ceremonies to orchestrate and supervise the flow of

6    information to the audience – information that was provided by CSTT employee GWS and CSTT associate Joe

7    Napoli.

8    No one compelled Mr. Goodman to make the voluntary telephone call (forum contact) to the U.S.C.G.

9    Charleston Sector Duty Officer to inquire about (in his words) a "dirty bomb" at the Port of Charleston on

10   06/14/2017.  Goodman should have reasonably known that such a call would trigger a cascading set of events that

11   would require an emergency response protocol developed for such radiological dispersal device [RDD] situations.

12   Although Goodman and his CSTT team members are non-residents of South Carolina they have chosen to

13   insert themselves into the operations of the Port of Charleston, S.C.  In fact, even after the 06/14/2017 "dirty bomb

14   hoax" Goodman continued interviews with "Rock Hudson" to analyze the Port's operations.

15   In a YouTube video, entitled "Hudson Revealed", 8/14/2017, (on the Jason Goodman YouTube channel),

16   (20K+ views) the following description is provided:

17   During the interview between Goodman and Rock Hudson (Marshall Richards), Hudson proclaims:

18   40:47:   HUDSON.  We know for a fact that 425 million cargo containers are transported each year – in

19   the world --  [Goodman – uh huh] that represents over 90% of the world's total trade.  [Goodman –

20   Amazing]

21   41:18:   HUDSON.  **Charleston, South Carolina is a port hub.**  [Goodman – right].  These hubs,

22   depending on the security protocols that they are using that, that day for that ship.  They can process 1,500

23   to 50,000 containers per day.

24   41:48:   HUDSON.  Based on the United Nations own meta-data in order for a port hub to process 50,000

25   containers in a 24 hour period is 2,083 containers per hour.  [Goodman – seems like a lot].  [Laughter]

26   Well, let's break it down further – 35 containers per minute.  [Goodman – wow].

27

28
                                    9
              **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    42:33:   HUDSON.  Because they are making such an effort to determine if a container is safe or not safe.

2    They ought to be ashamed of themselves.

3        (  https://www.youtube.com/watch?v=TWUI8gDPFx0  )

4

5    **CALDER THREE-PART TEST APPLIED TO GOODMAN'S ACTIONS**

6        Goodman is non-resident actor; but, so are out-of-state computer hackers that break into financial systems

7    in a non-resident state.  In NetApp, Inc. v. Nimble Storage, Inc., 41 F.Supp. 3d 816, 821, 825 (N.D. Cal. 2014) an

8    Australian computer hacker was determined to be within the jurisdiction of the California courts for computer

9    hacking of computer systems located in California.

10       The NetApp court relied on Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) citing

11   that:

12       Reynolds's activities must satisfy a three-part "effects test" under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct.
         1482, 79 L.Ed.2d 804 (1984):(1) commission of an intentional act, (2) expressly aimed at the forum state,
13       (3) causing harm that Reynolds knew was likely to be suffered in the forum state. *Schwarzenegger*, 374
         F.3d at 803. "In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum
14       state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207.

15

16       **PART ONE:**  There is no question that the profit-motivated non-resident defendant Goodman intentionally

17   telephoned (forum contact) the U.S.C.G. Charleston Sector Duty Officer on 6/14/2017.  This action consummated a

18   transaction with the forum.

19       In fact, Goodman's team (GWS, "Deep Uranium" and **Joe Napoli**) coordinated information with the

20   defendant on the movements of the MEMPHIS MAERSK before a live audience of over 2,000+ viewers for several

21   hours.  The purpose was to create a sensationalized news event.  Goodman broadcasted the telephone number to the

22   U.S.C.G. Charleston Sector Duty Officer while encouraging his audience to make additional forum contact with the

23   U.S.C.G. Duty Officer.

24       **PART TWO:**  The broadcast by Goodman of the Duty Officer's telephone number (at the Port of

25   Charleston) was "expressly aimed" at the facilities located in the state of South Carolina.  All the allegations

26   presented by the plaintiff regarding the closure of the Waldo Terminal arise out of (or are related to) the defendant's

27   forum transaction.

28

                                        10
               **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

As admitted to by the defendant in several YouTube videos, both Goodman and GWS had significant interest in the Port of Charleston and the container ship MEMPHIS MAERSK for several weeks prior to the 06/14/2017 dirty bomb hoax.  The closure of the Waldo Terminal on 06/14/2017 was merely a climax of activities orchestrated by the two (Goodman/GWS).

**PART THREE:**  A reasonable person would expect that notifying the U.S.C.G. about a "dirty bomb" would trigger emergency response events – as is the case in the commonly understood notion of U.S.C.G. search and rescue operations.  Therefore, a similar triggering of events to conduct an adequate search of the container ship MEMPHIS MAERSK would be the logical outcome.  A "dirty bomb" threat would be perceived to require a more comprehensive response than a mere "bomb threat".

The Court should consider that this was not a high school or college football game, but an industrial maritime port that contributes almost ten percent (10%) to the economy of the state of South Carolina.  Goodman's initial report of the "dirty bomb" was amplified by Goodman's insistence that his live audience send a Twitter message (tweet) to the U.S.C. 7th District Headquarters with the phrase "DIRTY BOMB   MEMPHIS MAERSK PLEASE INVESTIGATE".  A reasonable individual would expect a Twitter storm of over 8,000 individual tweets would cause a series of cascading events to respond to the R.D.D. threat information.  In sum, the defendant caused harm and injury when he knowingly initiated a radiological emergency response by the U.S.C.G.

**PERSONAL JURISDICTION UNDER BRISTOL-MYERS VS. CALIFORNIA**

The defendant's purposeful direction of the YouTube LiveStream, along with HIS associates (GWS, "Deep Uranium" and **Joe Napoli**) has been addressed by the wisdom of the U.S. Supreme Court which indicates that personal jurisdiction can be bestowed on an actor for a single occurrence that represents contact with the forum in question.  As the Supreme Court noted in <u>Bristol-Myers Squibb Co. v. Superior Court,</u> 137 S. Ct. 1773 (2017):

> In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U. S., at 919 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.* (internal quotation marks omitted).

> The 06/14/2017 dirty bomb hoax is the "underlying controversy" that took place in the forum state.

11

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1   **SOUTH CAROLINA LONG-ARM STATUTE**

2          The State of South Carolina has provided for personal jurisdiction to be applied to defendants that are

3   accused of committing tortious acts in the State.  This has been articulated in S.C. Code Ann. 36-2-803.  Quoted in

4   relevant part:

5              (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to
                   a cause of action arising from the person's:
6              (3)  commission of a tortious act in whole or in part in this State;

7

8          An extensive analysis of the applicability of South Carolina's long-arm statute has been provided by the

    State of South Carolina, Court of Appeals, in Moosally v. Norton & Company, Opinion No. 3769, 04/05/2004.
9

10  Quoted in relevant part:

11             Our long-arm statute, which affords broad power to exercise personal jurisdiction over causes of
               action arising from tortious injuries in South Carolina, has been construed to extend to the outer
               limits of the due process clause. Meyer v. Paschal, 330 S.C. 175, 498 S.E.2d 635 (1998);
12             Hammond v. Cummins Engine Co., 287 S.C. 200, 336 S.E.2d 867 (1985); see also Cozi
               Investments v. Schneider, 272 S.C. 354, 252 S.E.2d 116 (1979) (stating that South Carolina's
13             long-arm statute has been construed as a grant of jurisdiction as broad as constitutionally
               permissible; hence, parameters of statute are restricted only by due process limitations).
14
               And
15
               A single transaction is sufficient to confer jurisdiction if these factors are met.  Colite Indus., 297
16             S.C. at 429, 377 S.E.2d at 322; Hammond, 287 S.C. at 203, 336 S.E.2d at 868-69; see also Askins
               v. Firedoor Corp., 281 S.C. 611, 616, 316 S.E.2d 713, 716 (Ct. App. 1984) ("The cases are legion
17             that a single contact with the forum state is sufficient to give its courts personal jurisdiction over a
               nonresident if the contact gives rise to, or figures prominently in the cause of action under
18             consideration.").  Although a single act may support jurisdiction, it must create a "substantial
               connection" with the forum.  Burger King Corp., 471 U.S. at 475 n.18; White v. Stephens, 300
19             S.C. 241, 247, 387 S.E.2d 260, 263 (1990).  A single act that causes harm in this State may
               create sufficient minimum contacts where the harm arises out of or relates to that act.  Southern
20             Plastics Co. v. Southern Commerce Bank, 310 S.C. 256, 423 S.E.2d 128 (1992).

21             [emphasis added]  https://www.sccourts.org/opinions/displayOpinion.cfm?caseNo=3769

22  **NON-RESIDENT PLAINTIFF'S STANDING**
23
           The non-resident plaintiff has properly alleged the tortious interference with the operations of the Port of
24
    Charleston caused by Goodman and his CrowdSource The Truth team on 06/14/2017.  The disruption of the Waldo
25
    Terminal was significant as it induced distress and alarm amongst the surrounding communities.  Therefore,
26
    Goodman's conduct (forum contact via telephone calls) is related to the allegations presented in this lawsuit.
27

28                                                     12
                    **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1    The alleged injury caused by Goodman on 06/14/2017 is the disruption of operations at the Waldo

2  Terminal and the loss of monies and funds to cover the expenses of the multi-jurisdictional and multi-agency

3  emergency response.

4    As the Court has witnessed, the defendant is found of publishing UMFV allegations and accusations that

5  the undersigned was somehow involved in the dirty bomb hoax of 06/14/2017.  In this context, the plaintiff

6  continues to suffer injuries to his property interest in a professional reputation by the defendant's constant public

7  dissemination of false allegations that the plaintiff assisted, planned, participated in or somehow executed the events

8  on 06/14/207 that led to the Waldo Terminal closure.

9    By the defendants own words in the MEMORANDUM (Entry 9-1, 08/03/2017), "which evidence

10  indicates, he [undersigned] and his associates deliberately caused to occur [sic]".  As the Court will learn during the

11  discovery phase of this litigation there is no such evidence of involvement.  The plaintiff deserves the right to clear

12  his name.

13    The defendant continues his smear campaign against the plaintiff to deflect attention from the injuries

14  caused to the Port of Charleston and surrounding communities by the defendant's own voluntarily contacts with the

15  this forum.  In fact, the defendant now takes no responsibility for the closure of the Waldo Terminal and has

16  publicly transferred that liability to the plaintiff.

17    Therefore, the plaintiff's continued injuries (loss of property interest in a professional reputation) are

18  directly, and indirectly, related to the underlying controversy – that of the closure of the Waldo Terminal on

19  06/14/2017.

20  *PLAINTIFF'S STATUS AS PRIVATE ATTORNEY GENERAL*

21    As stated in the Amended Complaint [Entry 5, 06/29/2018] the plaintiff is standing in the shoes of the

22  private attorney general provisions of the federal Racketeering Influenced and Corrupt Organizations (RICO) Act.

23  As such this lawsuit remains a public interest lawsuit.  The plaintiff has decided to seek justice for the residents of

24  South Carolina impacted by Goodman's tortious interference in the Port of Charleston and should be permitted to

25  proceed.  Significant interests of the State of South Carolina are at stake and the plaintiff should be permitted to fill

26  the prosecutorial gap that apparently exists.  It is in the public interest to get to the bottom of Goodman's activities,

27  his frauds, his smear campaigns against decent citizens, his collections of monies by wire transfers, etc.

28

13
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

1     *VEXATIOUS PLEADING*

2         It is instructive to review the style of the case in the pleading submitted by Goodman.  In the

3 MEMORANDUM rather than list the plaintiff as "D. GEORGE SWEIGERT" Goodman uses the incorrect form of

4 "David George Sweigert".  In the extreme Goodman could be planning to capitalize on errors he himself has

5 injected into the Court's processes to escape further liability.

6         Additionally, the MEMORANDUM does not accompany a pleading MOTION and cites no authorities to

7 warrant a dismissal -- pure sense the MEMORANDUM is moot and a legal nullity.  This point is amplified as

8 Goodman has supplied no Certificate of Service with his vexatious pleading.

9                             **SUMMARY**

10         The plaintiff has chosen the forum of South Carolina -- namely because the lion's share anticipated

11 discovery involves the U.S.C.G. Charleston Sector, the Port of Charleston, the MAERSK Shipping Lines, etc. – the

12 Court should weigh the gross misconduct of the defendant and find in favor of the plaintiff to allow this controversy

13 to be adjudicated in a forum in the state of South Carolina.

14         Important interest of the State of South Carolina are involved in this public interest lawsuit.  Goodman's

15 tortious interference with the maritime operations of the Port of Charleston is a near terroristic act.  This misconduct

16 resulted in a direct injury to the residents of South Carolina.

17         The Amended Complaint [Entry 5, 06/29/2018] has pointed out, the R.D.D. emergency response involved

18 nearly a dozen federal and state agencies operating within the jurisdiction of the state of South Carolina (the overall

19 response included units from the: U.S.C.G., Federal Bureau of Investigation, National Guard, S.C. State Law

20 Enforcement Division (SLED), S.C. Department of Natural Resources (SCDNR) and emergency response units

21 from Charleston County and the city of Mount Pleasant, S.C.)

22         Goodman is allowed to continue his racketeering activities by publicly proclaiming frauds – which he

23 claims are based on "evidence" – to commercially profit.  Goodman continues to defraud the plaintiff with these

24 baseless allegations which will require evidence to disprove.

25         This forum is closest to the controversy in question.  Goodman voluntarily made contact with this forum to

26 commercially profit from a sensationalized news story.  Goodman made this contact with 2,000+ plus members of

27 the public watching this spectacle.  Lives and property were put in danger during the R.D.D. emergency response

28                             14
         **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

which was triggered by Goodman's supervision of the information fed to this audience.  The members of the public that reside in this forum have been injured and harmed by Goodman's actions.

### PRAYER

For the reasons described above Mr. Goodman's MEMORANDUM pleading (Doc. 9-1, 08/03/2018) should be struck from the record as it provides an insufficient defense, within a document that is redundant, immaterial, impertinent and scandalous in nature.

Dated this day of August _____, 2018

D. GEORGE SWEIGERT

15
**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNT SHASTA, CALIF  96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| D. GEORGE SWEIGERT | Case No.:  2:18-cv-01633-RMG-BM |
| Plaintiff, | |
| vs. | **PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018)** |
| JASON GOODMAN | |
| Defendant | |

**PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018)**

NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private attorney general, to submit this MOTION TO STRIKE the defendant's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018) pursuant to the following Rules of the Fed. Rules. Civ. Proc.:

- FRCP Rule 12(f)

- FRCP Rule 5(d)(1)

Accompanying this instant motion are several documents that are concurrently filed:

- BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)

- PLAINTIFF'S FIRST DECLARATION

- THIRD REQUEST FOR JUDICIAL NOTICE

1

**PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

which was triggered by Goodman's supervision of the information fed to this audience.  The members of the public that reside in this forum have been injured and harmed by Goodman's actions.

## PRAYER

For the reasons described above Mr. Goodman's MEMORANDUM pleading (Doc. 9-1, 08/03/2018) should be struck from the record as it provides an insufficient defense, within a document that is redundant, immaterial, impertinent and scandalous in nature.

Dated this day of August ____, 2018

D. GEORGE SWEIGERT

**BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE**

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNT SHASTA, CALIF 96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

        Plaintiff,

vs.

JASON GOODMAN

        Defendant

Case No.: 2:18-cv-01633-RMG-BM

**PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018)**

## PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018)

NOW COMES THE PRO SE plaintiff, a layman non-attorney acting in the public interest as a private attorney general, to submit this MOTION TO STRIKE the defendant's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018) pursuant to the following Rules of the Fed. Rules. Civ. Proc.:

- FRCP Rule 12(f)

- FRCP Rule 5(d)(1)

Accompanying this instant motion are several documents that are concurrently filed:

- BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)

- PLAINTIFF'S FIRST DECLARATION

- THIRD REQUEST FOR JUDICIAL NOTICE

1

**PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Additionally, plaintiff relies on the following pleadings located Docket entry no. **8**, filed **07/09/2018** at as if fully restated herein:

- MOTION for Order to Show Cause by D George Sweigert. (Attachments: # <u>1</u> Memo in Support, # <u>2</u> Request for Judicial Notice, # <u>3</u> Supporting Documents)  (Entered: 07/10/2018)).

## SUMMARY

Defendant Jason Goodman was motivated by profits when he voluntarily decided to inject himself into the affairs of the Port of Charleston, South Carolina.  On a YouTube LiveStream on-air broadcast viewed by 2,000+ members of the public Goodman led his viewers on a sensationalized social media drama – namely that the container ship MEMPHIS MAERSK was carrying a cargo of a radiological dispersion device (commonly known as a "dirty bomb" or "R.D.D.") on 06/14/2017.  Goodman and his YouTube CrowdSource The Truth team had tracked the ship to the Port of Charleston.

Goodman personally (1) broadcasted the phone number to the U.S. Coast Guard Charleston Sector Duty Officer, (2) telephone the Duty Officer himself, and (3) encouraged audience members to help him notify the Coast Guard about the MEMPHIS MAERSK.  Not satisfied with the response from the Duty Officer, three minutes later Goodman induced his audience to send a Twitter tweet to the U.S.C.G. 7th Destruct Headquarters with the following text "DIRTY BOMB … MEMPHIS MAERSK .. PLEASE INVESTIGATE".  The rebroadcast of this message resulted in 8,000 Twitter impressions.

The Amended Complaint [Entry 5, 06/29/2018] has pointed out, the R.D.D. emergency response involved nearly a dozen federal and state agencies operating within the jurisdiction of the state of South Carolina (the overall response included units from the: U.S.C.G., Federal Bureau of Investigation, National Guard, S.C. State Law Enforcement Division (SLED), S.C. Department of Natural Resources (SCDNR) and emergency response units from Charleston County and the city of Mount Pleasant, S.C.)

This was a reckless act of tortious interference upon the residents of the State of South Carolina by Goodman and his team of associates (**George Webb Sweigert, Okey Marshall Richards** and **Joe Napoli**).  Now Goodman believes the R.D.D. emergency response is the fault of the plaintiff and not himself.

2
**PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1       Despite six (6) declarations filed by the undersigned in related litigation (U.S.D.C. for the Eastern District

2  of Virginia, 3:17-cv-00601-MHL Steele et al v. Goodman et al.) denying Goodman's wild accusations of the

3  plaintiff's liability in this matter Goodman persists in his smear campaign (again motivated by profit).

4       Goodman continues to proclaim to members of the public that he has "evidence" of the undersigned's

5  involvement in serious crimes – including the plotting of the R.D.D. emergency response on 06/14/2017 at the Port

6  of Charleston.  Goodman defrauds the plaintiff of his property interest in a professional reputation while

7  simultaneously defrauding his CrowdSource The Truth followers of thousands of dollars via credit card transfers

8  using the interstate wires.  The tortious conduct of Goodman to close the Port of Charleston remains the underlying

9  controversy for all of Goodman's tortious conduct directed at the plaintiff.

10       Now Goodman expects this Court to accept his rambling pleading (MEMORANDUM (Entry 9-1,

11  08/03/2018)) filed with his jumble of irrelevancies that is an obvious attempt to transfer his liability for the closure

12  of the Port of Charleston onto the plaintiff.  Goodman has had to rely on his complete reckless disregard for the truth

13  to accomplish this stunning fraud on the court.

14

15       The Goodman MEMORANDUM (Entry 9-1, 08/03/2018) is a fraudulent artifice and should be ignored by

  this Court   Technicalities alone require the Goodman pleading to be ignored as no Certificate of Service was filed

16  pursuant to FRCP Rule FRCP Rule 5(d)(1).

17                              **PRAYER**

18       For the many reasons articulated in the documents that accompany this MOTION the Court should strike

19  Goodman's MEMORANDUM (Entry 9-1, 08/03/2018).

20

21

22       Dated this day of August _____, 2018

23

24                         D. GEORGE SWEIGERT

25

26

27                             3

28     **PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S**
         **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1  D. GEORGE SWEIGERT, C/O
   GENERAL DELIVERY
2  MOUNT SHASTA, CALIF  96067

3

4                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF SOUTH CAROLINA
5

6  D. GEORGE SWEIGERT                    Case No.: **2:18-cv-01633-RMG-BM**

               Plaintiff,
7
   vs.
8                                         **PLAINTIFF'S FIRST DECLARATION**

   JASON GOODMAN
9
               Defendant
10

11

12                    **FIRST DECLARATION OF PLAINTIFF**

13       NOW COMES THE PRO SE plaintiff, a layman non-attorney, to submit this declaration to support the

14  plaintiff's **BRIEF IN SUPPORT OF PLAINTIFF'S FRCP RULE 12(f) MOTION TO STRIKE**

15  **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 9-1, 08/03/2018)**.  This

16  declaration is filed concurrently with the aforementioned document.  The undersigned hereby attests that the

17  following statements are made under the penalties of perjury.

18

19     • I have no knowledge of a targeted harassment campaign against the defendant Goodman.

20     • I have no knowledge of associates that would participate in such a campaign.  I do not maintain

21        relationships with such "associates" that would participate in such a targeted harassment campaign.

22     • I have no knowledge of knowingly spreading false information.

23     • I have no knowledge of making false statements in court filings.

24     • I have no knowledge as to whether or not the "Virginia Federal" lawsuit is baseless or not.

25     • I have never said that defendant Goodman is a member of, or paid by, the Israeli intelligence service known

26        as Mossad.

27                                          1

28                    **PLAINTIFF'S FIRST DECLARATION**

- I have not communicated with RDS with any manner. I am only aware of possibly two (2) electronic messages that may have been inadvertently copied to the email account of the RDS initiative known as "UNRIG".

- Any communications inadvertently sent to UNRIG was done so in a unilateral manner with no response requested or expected.

- I have no association with GWS or RDS.

- I have had no association with Okey Marshall Richards (OMR), aka "Rock Hudson". I have not communicated with OMR in any form.

- I have not coordinated with GWS, RDS or OMR in any form. This includes any planning, organizing, facilitating or collaboration with activities that may be related to the Port of Charleston radiological emergency response of 06/14/2017.

- I am an honorably discharged veteran of the U.S. Air Force.

- I am unaware of menacing videos produced by me that contain direct threats to defendant Goodman.

- I have filed six (6) declarations in the "Virginia Federal" lawsuit that have restated essentially the same information as the foregoing.

- Attached in a copy of the court docket for the "Virginia Federal" lawsuit. I certify that the attached copy is an accurate and true copy of the court docket.

- The declarations that I have filed in the "Virginia Federal" lawsuit appear as documents 51 (05/22/2018), 54 (05/25/2018), 55 (05/29/2018), 56 (05/30/2018), 58 (06/01/2018), 59 (06/07/2018), and 60 (06/13/2018) in the attached.

I hereby attest, under penalties of perjury, that the above statements are true to the best of my memory and understanding.

Dated this day of August  8 , 2018

D. GEORGE SWEIGERT

3

**PLAINTIFF'S FIRST DECLARATION**

D. GEORGE SWEIGERT, C/O
GENERAL DELIVERY
MOUNTY SHASTA, CALIF 96067

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

D. GEORGE SWEIGERT

       Plaintiff,

vs.

JASON GOODMAN

       Defendant

Case No.: 2:18-cv-01633-RMG-BM

**PLAINTIFF'S THIRD
REQUEST FOR JUDICIAL NOTICE [RJN]**

## PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

NOW COMES THE PRO SE plaintiff, a layman non-attorney, to respectfully request this Court take notice of certain public records and documents. This Request for Judicial Notice [**RJN**] is submitted in support of the PLAINTIFF'S FRCP RULE 12(F) MOTION TO STRIKE DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Entry 9-1, 08/03/2018). (which accompanies this instant RJN).

PUBLIC ARTIFACT NUMBER ONE:  YouTube video of "Hoax Wars" channel.

PUBLIC ARTIFACT NUMBER TWO:  Defendant Jason Goodman's YouTube video

PUBLIC ARTIFACT NUMBER THREE:  Court docket of related litigation

### ATTESTATION

The undersigned hereby attests that the attached artifacts are true and accurate representations created from source displays on the Internet. These artifacts are provided in a good faith effort to increase judicial efficiency and to promote equal justice.

The undersigned hereby attests that the foregoing statements have been made under penalties of perjury dated this day _5_ of August 2018.

_D. George Sweigert_
D. GEORGE SWEIGERT

1
PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

**PUBLIC ARTIFACT NUMBER ONE:**

Internet URL:  https://www.youtube.com/watch?v=SB1juPQrRB4&t=36s



2

PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

1

2   **PUBLIC ARTIFACT NUMBER TWO:**

3              Internet URL: https://www.youtube.com/watch?v=hMJoAQ5OZY8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          3

28                 PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]



Transcript

03:32   clean hands here but ultimately this is
03:34   not something that was done by Israel it
03:37   is something that was done by Dick
03:39   Cheney Dick Cheney so a lot of people
03:41   have accused myself and George of being
03:43   Mossad agents and not speaking about
03:45   9/11 because of that speaking for myself
03:48   I have zero connection with any
03:50   Intelligence agencies whatsoever and as

English (auto-generated)

Up next

AUTOPLAY

Don't Just Trust The Plan,
Watch The Plan Unfold,

Robert David Steele
54,394 Views



11:17:12 a.m.
Tuesday, August 7, 2018
Pacific Time (DST)

1

2

PUBLIC ARTIFACT NUMBER THREE: Court docket

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

4

28

PLAINTIFF'S THIRD REQUEST FOR JUDICIAL NOTICE [RJN]

**Richard Johan Conrod , Jr.**
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3000
Email: rjconrod@kaufcan.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Mercia Francis**

**Interested Party**

**D. George Sweigert**                    represented by **D. George Sweigert**
General Delivery
Mount Shasta, CA 96067
PRO SE

**Defendant**

**Susan A. Lutzke**
*also known as*
"Queen Tut"

**Defendant**

**Queen Tut**
*a woman believed to be known as Carla
A. Howell
TERMINATED: 04/19/2018*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/01/2017 | 1 | COMPLAINT against Jason Goodman, Patricia A. Negron, and Queen Tut (Filing fee: $400, receipt number: 0422-5694148) filed by Robert David Steele and Earth Intelligence Network. (Attachments: # 1 Civil Cover Sheet) (jsmi, ) (Entered: 09/05/2017) |
| 09/08/2017 | 2 | Financial Interest Disclosure Statement by Earth Intelligence Network, Robert David Steele. (Biss, Steven) Modified docket text on 9/8/2017 (sbea, ) (Clerk replaced main document on 9/11/2017). NEF was regenerated. Modified docket text on 9/11/2017 (sbea, ). (Entered: 09/08/2017) |
| 09/08/2017 | 3 | Proposed Summons re 1 Complaint *(Summons to Jason Goodman)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/08/2017 | 4 | Proposed Summons re 1 Complaint *(Summons to Patricia Negron)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/08/2017 | 5 | Proposed Summons re 1 Complaint *(Summons to "Queen Tut" aka Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |

| 09/08/2017 | | Notice of Correction re: 2 Corporate Disclosure Statement; Clerk notified filing attorney that the wrong docketing event was used. The Clerk's Office has corrected this error. Attorney was also notified that the Statement did not contain the correct signature block. Clerk has requested attorney to email the document so that it maybe replaced and the NEF regenerated upon receipt. (sbea, ) (Entered: 09/08/2017) |
|---|---|---|
| 09/08/2017 | 6 | Summons Issued as to Jason Goodman, Patricia A. Negron, and Queen Tut. *NOTICE TO ATTORNEY: Please remove header prior to printing. Print out two Electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (sbea, ) (Entered: 09/08/2017)* |
| 09/08/2017 | 7 | Proposed Summons re 1 Complaint *(Summons to "Queen Tut" aka Carla Howell)* by Robert David Steele. (Biss, Steven) (Entered: 09/08/2017) |
| 09/11/2017 | 8 | ORDER. On September 1, 2017, Plaintiffs filed the Complaint against Defendants. Plaintiff Earth Intelligence Network ("Earth Intelligence") has failed to file its Disclosure Statement required by Federal Rule of Civil Procedure 7.1 1 and Local Civil Rule 7.1 of the Rules of the United States District Court for the Eastern District of Virginia. 2 Accordingly, the Court ORDERS Earth Intelligence to file its Financial Disclosure within seven (7) days of entry of this Order. Signed by District Judge M. Hannah Lauck on 09/11/2017. (tjoh, ) (Entered: 09/11/2017) |
| 09/12/2017 | 9 | Financial Interest Disclosure Statement (Local Rule 7.1) by Earth Intelligence Network. (Biss, Steven) (Entered: 09/12/2017) |
| 09/12/2017 | 10 | Summons Issued as to Queen Tut aka Carla Howell. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsmi, ) (Entered: 09/12/2017) |
| 09/21/2017 | 11 | AFFIDAVIT re 6 Summons Issued, 1 Complaint *(Affidavit of Service of Process Upon Jason Goodman)* by Robert David Steele. (Biss, Steven) (Entered: 09/21/2017) |
| 09/22/2017 | | Notice of Correction re 11 Affidavit. Filing attorney notified to return summons and proof of service to Clerk's Office for filing. (jsmi, ) (Entered: 09/22/2017) |
| 09/28/2017 | 12 | SUMMONS Returned Executed. Jason Goodman served on 9/18/2017, answer due 10/10/2017. (Attachments: # 1 Letter) (jsmi, ) (Entered: 09/28/2017) |
| 10/05/2017 | 13 | SUMMONS Returned Executed. Patricia A. Negron served on 9/26/2017, answer due 10/17/2017. (jsmi, ) (Entered: 10/05/2017) |
| 10/06/2017 | 14 | ANSWER to 1 Complaint by Jason Goodman. (Attachments: # 1 Letter)(tjoh, ) (Entered: 10/06/2017) |
| 10/17/2017 | 15 | MOTION for Extension of Time to File Answer re 1 Complaint *and related Responsive Pleadings* by Patricia A. Negron. (Attachments: # 1 Exhibit A-Exhibit A)(Frank, Terry) (Entered: 10/17/2017) |
| 10/24/2017 | 16 | ORDER that the Court GRANTS 15 Motion for Extension of Time to Answer. The Court ORDERS Negron to file her responsive pleadings to the Complaint |

| | | |
|---|---|---|
| | | no later than close of business November 8, 2017. Signed by District Judge M. Hannah Lauck on 10/24/2017. (jsmi, ) (Entered: 10/24/2017) |
| 11/02/2017 | 17 | CERTIFICATE of Service *and Mailing* re 6 Summons Issued, 1 Complaint by Steven Scott Biss on behalf of All Plaintiffs (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 11/02/2017) |
| 11/02/2017 | 18 | Summons Returned Unexecuted as to Queen Tut. (Attachments: # 1 Letter) (jsmi, ) (Entered: 11/03/2017) |
| 11/06/2017 | 19 | SUMMONS Returned Executed. Queen Tut served on 10/25/2017, answer due 11/15/2017. (Attachments: # 1 Letter) (jsmi, ) (Entered: 11/06/2017) |
| 11/08/2017 | 20 | NOTICE of Appearance by Richard Johan Conrod, Jr on behalf of Patricia A. Negron (Conrod, Richard) (Entered: 11/08/2017) |
| 11/08/2017 | 21 | MOTION to Dismiss by Patricia A. Negron. (Conrod, Richard) (Entered: 11/08/2017) |
| 11/08/2017 | 22 | Memorandum in Support re 21 MOTION to Dismiss filed by Patricia A. Negron. (Conrod, Richard) (Entered: 11/08/2017) |
| 11/15/2017 | 23 | Request for Hearing by Patricia A. Negron re 21 MOTION to Dismiss (Conrod, Richard) (Entered: 11/15/2017) |
| 11/20/2017 | 24 | Memorandum in Opposition re 21 MOTION to Dismiss filed by Robert David Steele. (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 11/20/2017) |
| 11/27/2017 | 25 | MOTION for Extension of Time to File Response/Reply as to 24 Memorandum in Opposition by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 11/27/2017) |
| 11/28/2017 | 26 | ORDER that the Court GRANTS 25 Motion for Extension of Time. The Court ORDERS Negron to file her reply no later than close of business December 4, 2017. Signed by District Judge M. Hannah Lauck on 11/28/2017. (jsmi, ) (Entered: 11/28/2017) |
| 12/04/2017 | 27 | MOTION for Extension of Time to File Response/Reply as to 24 Memorandum in Opposition by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 12/04/2017) |
| 12/05/2017 | 28 | ORDER that the Court GRANTS Defendant Patricia A. Negron's 27 Motion for Extension of Time. The Court ORDERS Negron to file her reply no later than close of business December 8, 2017. Signed by District Judge M. Hannah Lauck on 12/5/2017. (jsmi, ) (Entered: 12/05/2017) |
| 12/08/2017 | 29 | REPLY to Response to Motion re 21 MOTION to Dismiss filed by Patricia A. Negron. (Frank, Terry) (Entered: 12/08/2017) |
| 01/23/2018 | 30 | Request for Entry of Default as to *"Queen Tut" a/k/a Susan A. Lutzke* by Earth Intelligence Network, Robert David Steele. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Biss, Steven) (Entered: 01/23/2018) |
| 02/21/2018 | 31 | |

| | | (Court only) Letter received from Mercia Francis. (jsmi, ) (Additional attachment(s) added on 2/22/2018: # 1 Attachment) (jsmi, ). (Entered: 02/22/2018) |
|---|---|---|
| 02/23/2018 | 32 | (Court only) Letter *Responding to Document 31*. (Biss, Steven) (Entered: 02/23/2018) |
| 03/01/2018 | 33 | (Court only) Letter received from Mercia Francis. (jsmi, ) (Entered: 03/01/2018) |
| 03/07/2018 | 34 | (Court only) Response to 31 Letter, 33 Letter filed by Robert David Steele. (Biss, Steven) (Entered: 03/07/2018) |
| 03/09/2018 | 35 | ORDER that the Court DENIES WITHOUT PREJUDICE Plaintiff's 30 Motion for Entry of Default. The Court DIRECTS the Clerk to restrict the filings associated with docket numbers 31 and 33 as "Court Only". See Order for details. Signed by District Judge M. Hannah Lauck on 3/9/2018. (jsmi, ) (Entered: 03/09/2018) |
| 03/25/2018 | 36 | MOTION to Amend/Correct 1 Complaint *(Motion For Leave To File Amended Complaint)* by Robert David Steele. (Attachments: # 1 Exhibit A)(Biss, Steven) (Entered: 03/25/2018) |
| 03/25/2018 | 37 | Memorandum in Support re 36 MOTION to Amend/Correct 1 Complaint *(Motion For Leave To File Amended Complaint)* filed by Robert David Steele. (Biss, Steven) (Entered: 03/25/2018) |
| 04/11/2018 | 38 | ORDER that the Court GRANTS 36 Motion to Amend. Plaintiffs SHALL file their Amended Complaint within 5 days of this Order. Plaintiffs have 90 days to serve any remaining defendants not yet served. To the extent necessary the Court DENIES AS MOOT Negron's 21 Motion to Dismiss. All responsive pleadings to the Amended Complaint SHALL be filed in accordance with the Federal and Local Rules of Civil Procedure. Signed by District Judge M. Hannah Lauck on 4/11/2018. Copy to Goodman as directed. (jsmi, ) (Entered: 04/11/2018) |
| 04/13/2018 | 39 | AMENDED COMPLAINT against All Defendants, filed by Robert David Steele.(Biss, Steven) (Entered: 04/13/2018) |
| 04/17/2018 | 40 | Proposed Summons re 39 Amended Complaint *(Request for Issuance of Summons to Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 04/17/2018) |
| 04/19/2018 | 41 | Summons Issued as to Susan A. Lutzke. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (jsmi, ) (Entered: 04/19/2018) |
| 04/26/2018 | 42 | MOTION for Extension of Time to File Response/Reply as to 39 Amended Complaint by Patricia A. Negron. (Attachments: # 1 Exhibit A)(Frank, Terry) (Entered: 04/26/2018) |
| 04/27/2018 | 43 | ORDER that the Court GRANTS Defendant Patricia A. Negron's 42 Motion for Extension of Time. Negron SHALL FILE her response to Plaintiffs' Amended Complaint no later than close of business May 11, 2018. Signed by District Judge M. Hannah Lauck on 4/27/2018. (jsmi, ) (Entered: 04/27/2018) |

| 04/30/2018 | 44 | ANSWER to Complaint by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 04/30/2018 | 45 | SPECIAL MOTION to Dismiss the Complaint Under the VA Anti-Slapp Statute by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 04/30/2018 | 46 | MOTION to Sever by Jason Goodman. (smej, ) (Entered: 05/01/2018) |
| 05/11/2018 | 47 | MOTION to Dismiss for Failure to State a Claim by Patricia A. Negron. (Frank, Terry) (Entered: 05/11/2018) |
| 05/11/2018 | 48 | Memorandum in Support re 47 MOTION to Dismiss for Failure to State a Claim filed by Patricia A. Negron. (Frank, Terry) (Entered: 05/11/2018) |
| 05/14/2018 | 49 | Memorandum in Opposition re 45 MOTION to Dismiss filed by Robert David Steele. (Biss, Steven) (Entered: 05/14/2018) |
| 05/14/2018 | 50 | Memorandum in Opposition re 46 MOTION to Sever filed by Robert David Steele. (Biss, Steven) (Entered: 05/14/2018) |
| 05/22/2018 | 51 | Declaration of George Sweigert. (Attachments: # 1 Exhibits)(jsmi, ) (Entered: 05/23/2018) |
| 05/23/2018 | 52 | Defendant's Reply to Memorandum Opposition to Special Motion to Dismiss filed by Jason Goodman. (jsmi, ) (Entered: 05/24/2018) |
| 05/25/2018 | 53 | Memorandum in Opposition re 47 MOTION to Dismiss for Failure to State a Claim filed by Robert David Steele. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Biss, Steven) (Entered: 05/25/2018) |
| 05/25/2018 | 54 | Second Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/25/2018) |
| 05/29/2018 | 55 | Third Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/30/2018) |
| 05/30/2018 | 56 | Fourth Declaration of D. George Sweigert. (jsmi, ) (Entered: 05/30/2018) |
| 05/31/2018 | 57 | Reply to Motion re 47 MOTION to Dismiss for Failure to State a Claim filed by Patricia A. Negron. (Conrod, Richard) (Entered: 05/31/2018) |
| 06/01/2018 | 58 | Fifth Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/04/2018) |
| 06/07/2018 | 59 | Sixth Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/07/2018) |
| 06/13/2018 | 60 | Seventh Declaration of D. George Sweigert. (jsmi, ) (Entered: 06/14/2018) |
| 07/25/2018 | 61 | AFFIDAVIT re 39 Amended Complaint, 41 Summons Issued *(Affidavit Of Service Of Summons And Complaint On Defendant, Susan A. Lutzke)* by Robert David Steele. (Biss, Steven) (Entered: 07/25/2018) |
| 07/26/2018 | | Notice of Correction re 61 Affidavit. Filing attorney notified to return proof of service documents to the Clerk's Office for filing. (jsmi, ) (Entered: 07/26/2018) |
| 07/30/2018 | 62 | SUMMONS Returned Executed. Susan A. Lutzke served on 7/10/2018, answer due 7/31/2018. (jsmi, ) (Entered: 07/31/2018) |
| 08/07/2018 | 63 | NOTICE of Change of Address by D. George Sweigert to General Delivery, Mount Shasta, California 96067. (smej, ) (Entered: 08/07/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/08/2018 17:43:04 | | | |
| **PACER Login:** | dgsweigert:5610803:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cv-00601-MHL |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |